PEOPLE v. TEBO

1. SEARCHES AND SEIZURES—LEGALITY—APPEAL AND ERROR—PRE-
SERVING QUESTION—RECORD ON APPEAL.
   The legality of a search and seizure will not be considered for
   the first time on appeal where defendant failed to raise the
   issue in the trial court because the appellate court is with-
   out a sufficient record to make a fair decision.

2. TELECOMMUNICATIONS—INTERCEPTION—OMNIBUS CRIME BILL—
STATUTES.
   Interception of oral or wire communications through the use
   of any electronic, mechanical, or other device is prohibited
   by the Federal Omnibus Crime Bill of 1968 except as other-
   wise provided by the statute (18 USCA 2510–2520).

3. TELECOMMUNICATIONS — INTERCEPTION — TELEPHONE — LAW
ENFORCEMENT OFFICER — OMNIBUS CRIME BILL — STATUTES.
   A telephone instrument being used by an investigative or law
   enforcement officer in the ordinary course of his duties is not
   a device used for a prohibited interception of communications
   under the Omnibus Crime Bill of 1968 (18 USCA 2510).

4. TELECOMMUNICATIONS — TELEPHONE — EXTENSION — RIGHT OF
PRIVACY — INTERCEPTION — CONSENT.
   A person does not lose his right to privacy of telephone com-
   munication merely because an extension line exists and his

REFERENCES FOR POINTS IN HEADNOTES
[1, 8]  5 Am Jur 2d, Appeal and Error § 545.
        29 Am Jur 2d, Evidence §§ 425, 426.
[2–7]  41 Am Jur, Privacy § 29.
        47 Am Jur, Searches and Seizures § 12.
        29 Am Jur 2d, Evidence § 428 et seq.
        Federal constitution as affecting admissibility of evidence obtained
            by illegal search and seizure.  84 ALR2d 959.
        What constitutes an "interception" of a telephone or similar
            communication forbidden by the Federal Communications Act
            [47 USC § 605] or similar state statutes.  9 ALR3d 423.

use of a telephone with an extension does not necessarily constitute his consent to an interception.

5. TELECOMMUNICATIONS — INTERCEPTION — TELEPHONE — LAW ENFORCEMENT OFFICER — OMNIBUS CRIME BILL — STATUTES.

A police officer was not using a telephone instrument in the ordinary course of his duties in listening on an extension telephone to a telephone call made by a prisoner to his mother, even though police regularly listened to phone calls made by prisoners to prevent being charged for unauthorized long-distance calls (18 USCA 2510).

6. TELECOMMUNICATIONS — INTERCEPTION — TELEPHONE — EXTENSION — CONSENT — STATUTES.

Use by a prisoner of a telephone in a police station to call his mother was not consent to interception of the call by an officer listening on an extension telephone, where there is nothing in the record to indicate that the prisoner should have known that someone was listening in (18 USCA 2511).

7. EVIDENCE — TELECOMMUNICATIONS — INTERCEPTION — ADMISSIBILITY.

An undersheriff's testimony of what a defendant said to his mother in a telephone call made from a police station, heard by listening on an extension telephone in the station, was improperly admitted where the listening was not done in the ordinary course of the officer's duties and was not consented to by defendant (18 USCA 2510, 2511).

8. CRIMINAL LAW—TELECOMMUNICATIONS—EVIDENCE—FAILURE TO OBJECT.

Failure to object to inadmissible testimony acquired by eavesdropping on defendant's telephone conversation with his mother did not preclude a reversal of defendant's conviction and remand for a new trial where it appeared that a new trial conducted without the inadmissible testimony might well result in defendant's acquittal because the defendant's defense was alibi, with his mother providing the alibi testimony, the eavesdropping testimony went to her credibility, and the jury had had difficulty reaching a verdict of guilty at the first trial.

Appeal from Iosco, Allan C. Miller, J. Submitted Division 3 October 7, 1971, at Marquette. (Docket No. 10722.) Decided November 23, 1971.

Kenneth R. Tebo was convicted of breaking and entering. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Kenneth J. Myles,* Prosecuting Attorney, for the people.

*James G. Orford,* for defendant on appeal.

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

BRONSON, J. Defendant was convicted of breaking and entering (MCLA § 750.110 [Stat Ann 1971 Cum Supp § 28.305]) in Iosco County Circuit Court by a jury and was sentenced to a term of four to ten years. He appeals of right.

On the night in question, the defendant, Gregory Collins, Ronald Carraway, Beverly Baynes, and an unidentified girl were at defendant's home listening to records until about 2:30 a.m. Miss Baynes testified that the others took her home about that time. Another witness, Mrs. Alice Weilandt, testified to seeing three boys walking toward the Gold'n Grove Grocery at approximately 2:30 a. m. She saw them return before 3 a. m. carrying several items, one of which appeared to be a case of beer, in the direction of a trailer belonging to Carraway's grandmother. She identified two of the boys as Carraway and Collins. The owner of the Gold'n Grove Grocery notified the local sheriff's department immediately upon finding his store in shambles about 7 a..m. the same morning. At about 8 a. m. Officer Knuth spoke with Mrs. Weilandt. Upon learning what she had seen, he remembered a request by Carraway's grand-

mother that he be kept off the trailer premises. Officer Knuth arrived at the trailer about 8:30 a. m. and noticed a screen had been ripped off one of the rear windows. Upon looking through the window he saw two of the boys and several items which corresponded to items which had been taken from the Gold'n Grove. At this point, the Chief of Police was called for assistance. After the chief arrived, Officer Knuth entered the trailer, roused the three boys, took them outside to the chief, and gathered up the items corresponding to the list of items missing from the grocery store. The boys were then arrested and taken to the police station where a bottle of "Off" was found in defendant's pocket. This bottle was identified at trial as being the one taken from the grocery store.

At the trial, Carraway, who pled guilty, invoked the Fifth Amendment and refused to testify as to who had been with him. He was found in contempt. Collins, who had already been convicted, testified that defendant was not with him on the night in question. Additionally, the defendant's mother testified that she awoke about 4 a.m. on the night in question, heard the record player going and told her son to go to bed. To destroy the credibility of this alibi testimony, the prosecutor offered the testimony of Leon Putnam, an undersheriff. He testified as follows:

"*Q.* Now, officer, on June 18, 1970, was Kenneth Tebo brought into your jail to be booked and lodged?

"*A.* Right, he was.

"*Q.* Did you offer him an opportunity to make a telephone call?

"*A.* He made a telephone call soon after he was booked that day. I think it was around noon or shortly thereafter when they were brought in.

"*Q.* I see. Now, did he tell you who he was going to call?

"*A.* He wanted to make a call, and so he dialed his number, dialed the number. Well, there was something mentioned. I knew at the time he was calling his folks or his mother.

"*Q.* And did you lift up the extension to ascertain who he was talking to?

"*A.* I sure did.

"*Q.* Did you recognize that voice?

"*A.* Right, it was his mother's.

"*Q.* Do you recall the conversation?

"*A.* Well, I can recall pretty much exactly what it was. She said, 'Ken, are you mixed up in this?' He said, 'We have got it all set. They are going to say I wasn't there.'

"*Mr. Myles:* No further questions."

In her rebuttal testimony, defendant's mother testified that her phone had been removed three to four months prior to the alleged phone call. On cross-examination, she changed her story to not remembering receiving the phone call.

The jury was charged and retired to deliberate. After deliberating about 1 hour and 35 minutes, the jury sent a note to the judge showing the scores of ballots they had taken. These showed a badly split jury. The judge read the note into the record and called the jury back in. He charged it as follows:

"*The Court:* \* \* \* While I would not have requested the score of your ballots that you handed to the sheriff and to me, and so I have placed it on the record, it does show quite a broad split, although with very little change from the beginning, and I read the actual figures to the both sides and to the defendant.

"This is of course a serious matter, serious to the people and serious to the defendant. An hour and a half's deliberation is a lot for what would seem to

be a simple case of identity or lack of identity. The result of course if you are failing to agree upon a verdict is of course a mistrial and a trial over again. I wanted you to know of that consequence upon failing to agree upon a verdict. Human affairs are never subject to mathematical certainty. On the other hand, of course, mere preponderance of the evidence, of the tipping of evidence one way or the other is not sufficient.

"The issue of course is whether or not there is a reasonable doubt as to whether or not the defendant was one of the persons who joined in this offense. It is clear there was a breaking and entering. Two boys have been convicted and sentenced because of it. The question is, was the defendant one of those persons?

"You have heard the testimony. There is no reason why you can't decide this case as well as 12 more jurors that we might bring in. I ask you to do your duty."

Defendant's attorney objected to the charge. The jury deliberated for another hour before returning a guilty verdict.

On appeal defendant asserts five assignments of error. Because of the position we take in this case, we need only discuss two of these assignments at length.

First, defendant argues that the evidence seized at Carraway's grandmother's trailer was the fruit of an unconstitutional search and seizure. This is the first time defendant has challenged the legality of the search. This Court will not consider this issue for the first time on appeal since the Court is without a sufficient record to make a fair decision. *People* v. *Wilson* (1967), 8 Mich App 651.

Defendant next contends that it was error to admit Undersheriff Putnam's testimony regarding the telephone call. The police station to which defend-

ant was taken had several telephones, each of which was an extension off a main one. Defendant requested the right to make a phone call. Putnam agreed to this and listened. No objection to this testimony was raised below.

Defendant argues that the conversation was governed by § 605 of the Federal Communications Act (47 USCA § 605) as interpreted by the Supreme Court in *Lee* v. *Florida* (1968), 392 US 378 (88 S Ct 2096, 20 L Ed 2d 1166). Section 605 provided that "no person not being authorized by the sender shall intercept any communication and divulge" its use or contents to any person. In *Lee,* the Supreme Court held that the police intercepted phone conversations when they had a phone connected to the same party line the defendant's phone was connected to in such a way as to permit continuous surreptitious surveillance of all conversations on the line. Plaintiff counters by arguing that under *Rathbun* v. *United States* (1957), 355 US 107 (78 S Ct 161, 2 L Ed 2d 134), no interception took place. *Rathbun* held that no interception under § 605 occurs when police listen in on a regular extension phone with the consent of one of the parties.

We need not discuss § 605 because it was amended prior to the operative facts of this case and no longer applies. The situation in question is now governed by Title III of the Omnibus Crime Bill of 1968, 18 USCA §§ 2510–2520. This statute prohibits the interception of oral or wire communications through the use of any electronic, mechanical, or other device.

Title III was drafted to delineate a uniform basis for authorizing electronic surveillance in compliance with the standards set forth in *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576).

Intrastate phone calls are governed by it. *Weiss* v. *United States* (1939), 308 US 321 (60 S Ct 269, 84 L Ed 298).

The statute sets forth detailed criteria for courts to follow in authorizing electronic surveillance, 18 USCA § 2516. These criteria have been held constitutional. *United States* v. *Sklaroff* (SD Fla, 1971), 323 F Supp 296. In the instant case, there has been no court authorization nor did either party to the conversation consent to Officer Putnam listening in. The question then is whether there has been an interception prohibited by statute.

As indicated, an interception occurs when the contents of an oral or wire communication is obtained "through the use of any electronic, mechanical or other device". This latter phrase is defined to mean:

"(5) * * * any device or apparatus which can be used to intercept a wire or oral communication other than—

"(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, * * * (ii) being used by * * * *an investigative or law enforcement officer in the ordinary course of his duties.*" 18 USCA § 2510(5)(a)(ii). (Emphasis supplied.)

At first glance it would appear that Officer Putnam was using the extension in the ordinary course of his duties and that no interception occurred. A more careful reading of the statute indicates otherwise.

As 18 USCA § 2510 is a definitional section, it must be read together with other sections of the statute. 18 USCA § 2511 is the basic prohibition against the interception of wire communications unless provided otherwise elsewhere in the statute. Subsection (2)(c) provides an exception when a person acting under color of law is a party to the

communication or has been given prior consent by one of the parties. Such an exception is consistent with *Rathbun, supra.* If this exception does not apply, then an officer must comply with other sections of the statute by getting a court-approved order to eavesdrop. This procedure is consistent with the statute's purpose of protecting the privacy of wire communications. S. Rep. No. 1097 (1968).

We recognize, as the Supreme Court did in *Rathbun, supra,* the importance of extension phones in the telephone communications system. When an extension line exists, a party's privacy is vulnerable. But we do not believe that a person loses all protection merely because an extension line exists. See *Lee v. Florida, supra,* p 381, n 5 (88 S Ct 2098, n 5, 20 L Ed 2d 1170, n 5). We also do not believe the use of a phone with an extension is necessarily a "consent" to an interception. There is nothing in the record which indicates that the defendant should have known someone was listening in. The fact that he was using a phone in a police station should not alter a person's expected privacy in a phone conversation. The Omnibus Crime Bill is based on Fourth Amendment case law which protects people, not places. *Katz v. United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576). Further, the fact that a routine regularly-employed police procedure is involved puts this case closer to *Lee, supra,* than to *Rathbun, supra.* The police claim they were listening to conversations emanating from their headquarters on a regular basis to prevent being charged for long-distance phone calls a prisoner might make without their knowledge. The plain effect, no matter what the intent, is to eavesdrop on all calls emanating from its phones. The interest of the sheriff's department in limiting expenses can be protected by other procedures. We do not believe the activity

engaged in here was an ordinary duty contemplated by the statute. We believe that it is consistent with the statute to hold, and do so hold, that a police officer is acting in the ordinary course of his duties within 18 USCA § 2510(5)(a) when he acts under a duly authorized court order or comes within 18 USCA § 2511(2)(c), and it was error to admit evidence of the conversation.

Ordinarily, the fact that no objection to this evidence was raised below would preclude consideration of the question. *People* v. *Camak* (1967), 5 Mich App 655. Even when the failure to object is a serious mistake, we will not reverse unless we are convinced a new trial will serve a useful purpose. *People* v. *Mattison* (1970), 26 Mich App 453. In making such a decision, the public's interest in avoiding purposeless trials is balanced against defendant's right to a fair trial. A new trial will not be ordered unless it appears that a new trial conducted without the mistake in question may well result in acquittal. *People* v. *Degraffenreid* (1969), 19 Mich App 702. We believe that an acquittal could result in this case. Defendant's defense was alibi. His mother gave alibi testimony. Undersheriff Putnam's testimony went to the credibility of her testimony. In view of the difficulty the jury exhibited in reaching a verdict, a retrial without Mr. Putnam's testimony could result in a different verdict.

The other issues raised by defendant deal with the jury deliberations, whether the jury was coerced into finding guilty and whether the evidence is sufficient to support the verdict. We need not discuss them.

Reversed and remanded for a new trial.

All concurred.