Nina GERRARD and Patrick T.
Murphy, Plaintiffs,

v.

Benjamin BLACKMAN, M.D., et al.,
Defendants.

No. 75 C 1144.

United States District Court,
N. D. Illinois, E. D.

Oct. 6, 1975.

Gerald F. Murray, William J. Martin, Chicago, Ill., for plaintiffs.

James E. Dahl, William D. Maddox, Douglas R. Carlson, Helaine W. Heydemann, Wildman, Harrold, Allen & Dixon, James O. Nolan, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiffs have filed a complaint against defendants seeking monetary relief for alleged violations of the wire and oral communications interception laws, Count I, as well as the Civil Rights Laws, Count II. Subject matter jurisdiction is based on 28 U.S.C. §§ 1331, 1343, inasmuch as plaintiffs' causes of action arise under 18 U.S.C. § 2520 and 42 U.S.C. § 1983.

The complaint is grounded upon the following alleged facts. On or about November 11, 1974, plaintiff Nina Gerrard, was admitted into the Psychiatric Ward at Wesley Pavilion of Northwestern Memorial Hospital (Wesley) at her husband's request. Defendant Blackman, a psychiatrist and medical doctor licensed to practice in the State of Illinois and employed by plaintiff's husband to effectuate her admission to Wesley, admitted her into the maximum security restricted wing of the Psychiatric Ward. In this wing, she was not allowed cosmetics, matches, visits or calls except from her husband who, she alleges, admitted her against her will.

Following her admittance to the ward and defendant Blackman's orders restricting her to the maximum security wing, plaintiff attempted to have Blackman relieved of his duties as her psychiatrist. The doctor refused plaintiff's attempts to fire him. Pursuant to advice from supervisory staff personnel, she submitted a letter to the hospital demanding that Dr. Blackman be relieved of his duties and that Dr. Schlensky be substituted.

On or about November 15, 1974, Dr. Schlensky was apparently informed that he was to replace Dr. Blackman as plaintiff's psychiatrist. He immediately conferred with plaintiff, removed her from the maximum security wing, and informed her that she could not be legally detained but advised her to remain voluntarily. Less than six hours later, the hospital administrator, apparently in response to objections voiced by Dr. Blackman, removed Dr. Schlensky and reinstated Dr. Blackman, who immediately returned plaintiff to the maximum security wing.

Relatives of Mrs. Gerrard spoke to plaintiff Murphy, an attorney, concerning the foregoing chain of events and he agreed to be her attorney in the matter. He was permitted by the hospital to speak to Mrs. Gerrard on the phone and was informed that he should identify himself each time he called, since plaintiff's calls were being restricted to him and her husband. Murphy had approximately five conversations with plaintiff Gerrard between November 15 and November 17.

During a conversation at approximately 2:00 P.M. November 17, plaintiff Gerrard told plaintiff Murphy that she thought someone was listening to their phone conversation. Upon Murphy's asking whether a third party was monitoring the call, defendant Kitty Voss, Chief Nurse, identified herself and said that, pursuant to Dr. Blackman's orders, she was monitoring all calls between plaintiff Gerrard and her attorney. The chief nurse read the contents of an order by Dr. Blackman and by way of apology expressed her disagreement with it.

Plaintiff Murphy immediately called the Director of the Psychiatric Unit at Wesley and demanded that Dr. Blackman be removed the following day or criminal charges would be brought against him. Dr. Blackman was removed on November 18, 1974. Dr. Schlensky was retained by Mrs. Gerrard, and she voluntarily remained in the ward for two weeks and was never returned to the security wing.

Plaintiffs claim actual damages of $1,-000 and punitive damages of $100,000 growing out of the interference with their contractual attorney-client relationship by defendants "illegally and without consent of either plaintiff intercepting, through the use of an extension phone, conversations between the plaintiffs in violation of 18 U.S.C. § 2511(a)."

In Count II, brought under 42 U.S.C. § 1983, plaintiffs seek $1,000 actual damages and $100,000 punitive damages for alleged violations by defendants of their First, Fourth, Sixth, Ninth and Fourteenth Amendment rights freely to confer and express themselves pursuant to their attorney-client contractual relationship without the malicious intentional acts of defendants in illegally intercepting the telephone conversations between the plaintiffs.

Defendants have moved to dismiss the amended complaint because: 1) the acts alleged to have been perpetrated by defendants do not constitute an interception, use or disclosure of plaintiff's communications in violation of 18 U.S.C. §§ 2511, 2520, 2) plaintiffs do not allege specific actual damages recoverable under any of the statutes alleged, 3) plaintiffs have made no allegations to support a claim for punitive damages, 4) Count II does not allege that the acts complained of were performed under color of state law, 5) the acts complained of do not constitute a violation of a right, privilege or immunity guaranteed by the constitution or laws of the United States, 6) no facts have been alleged in support of a finding that plaintiffs' First, Fourth, Fifth, Sixth, Ninth, or Fourteenth Amendment rights have been violated.

*Applicability of 18 U.S.C. § 2510 et seq.*

■ The Tenth Circuit in *United States v. Harpel,* 493 F.2d 346 (10th Cir. 1974) has dealt with the question of whether the unauthorized or non-consented to use of an extension phone to overhear the conversation of two parties qualifies as an exception to the definition of interception under § 2510(5)(a).

While recognizing the exception for a telephone employed by the subscriber or user in the ordinary course of its business, the Court held:

What appellant Harpel has overlooked in his reliance on the exception is that the telephone equipment must be used "in the ordinary course of business." We hold as a matter of law that a telephone extension used without authorization or consent to surreptitiously record a private telephone conversation is not used in the ordinary course of business. This conclusion comports with the basic purpose of the statute, the protection of privacy, and is in line with the reasoning of the court in People v. Tebo, 37 Mich.App. 141, 194 N.W.2d 517.

*United States v. Christman,* 375 F. Supp. 1354 (N.D.Cal.1974) cited by defendants in support of the proposition that the phone conversation in question was not intercepted is distinguishable from the instant case. There the Court held that the Regional Chief of Security was not guilty of unlawful interception of telephone conversations when he monitored and recorded conversations occurring on the *chain's privately operated* intercommunications system.

It is plain from an examination of the statute and its legislative history that Congress intended to apply criminal sanctions only to certain limited types of interceptions of communications. See *Simpson v. Simpson,* 409 F.2d 803 (5th Cir. 1974) and *United States v. Blattel,* 340 F.Supp. 1140 (N.D.Iowa, 1972). A privately operated intercommunication system, not using the facilities of "a common carrier . . . operating such facilities for the transmission of interstate or foreign communications" is not covered by the statute. [§ 2510(1) 1] *Christman, supra,* at 1355.

Also distinguishable from the instant case is *Smith v. Wunker,* 356 F.Supp. 44 (S.D.Ohio 1972), which is cited by the defendants. There the suit was brought by one party to a conversation against

another. The recording of a conversation by one party to it does not violate 18 U.S.C. § 2511.[1]

Dr. Blackman argues that the instant complaint should be dismissed for failure to state a claim under 18 U.S.C. § 2510 et seq. He relies principally on *Simpson v. Simpson*, 490 F.2d 803 (5th Cir. 1974) in support of this proposition.[2] In Simpson, the Fifth Circuit reluctantly decided that the "Interception" statute did not apply to a husband's intercepting, by attaching a device to phone lines within his own home, a conversation between his wife and a third party. The conclusion was based on an extensive perusal of all the legislative history pertaining to private interceptions:

> As should be obvious from the foregoing, we are not without doubts about our decision. However, we have concluded that the statute is not sufficiently definite and specific to create a federal cause of action for the redress of appellant's grievances against her former husband. Our decision is, of course, limited to the specific facts of this case. No public official is involved, nor is any private person other than appellee, and the *locus in quo* does not extend beyond the marital home of the parties. *Simpson, supra,* at 810.

Far from supporting the defendant's contention that *Simpson* bars any cause of action in the instant case, the thrust of the Fifth Circuit opinion is that an unauthorized intrusion by a third party of the kind here involved falls within the purview of the statute. The following language is illustrative:

> Indeed, were appellant seeking to recover from a third party, we could not, on the basis of this legislative history, accept the defense that the interceptions were authorized by the husband. However, to our minds a third-party intrusion into the marital home, even if instigated by one spouse, is an offense against a spouse's privacy of a much greater magnitude than is personal surveillance by the other spouse. The latter, it seems to us, is consistent with whatever expectations of privacy spouses might have vis-a-vis each other within the marital home. (footnote number omitted) *Simpson* at 808–809.

It is obvious, therefore, that *Simpson* does not except the instant alleged interception from the coverage of the statute.

Defendants argue that the plaintiffs' complaint is insufficient as a matter of law, because they do not allege that the phone, used to monitor the conversations in question, was not used in the ordinary course of business, that the conversations recorded were private, that defendants' monitoring was surreptitious, or that the telephone used by the defendants was not part of a private intra-hospital system.

■ Since the courts have consistently held that a complaint should not be dismissed for failure to state a claim unless

---

1. Although the courts in *Smith v. Wunker* and *U. S. v. Christman*, made statements that "telephone" and "extension" phones are clearly exempted by 18 U.S.C. § 2510(5)(a), neither court dealt with the ordinary course of business language addressed by the Tenth Circuit in *Harpel*. We note also that the Court in *Harpel* indicated that the crucial inquiry was how the aural acquisition was made, not whether or not it was recorded.

2. The statute clearly does not support the following ambiguous statement made by the Third Circuit in *U. S. v. Iannelli*, 477 F.2d 999 (3rd Cir. 1973) if it is read to mean that there is no civil remedy for unlawful interception:

> In any event the suppression remedy specified in 18 U.S.C. § 2518(10) applies to unlawful interceptions. A civil remedy applies to unlawful disclosures. 18 U.S.C. § 2250. Section 2520 of the statute reads:
>
> > Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief, we deny defendants' motion as to the eavesdropping count. *Ammerman v. Miller,* 139 U.S.App.D.C. 188, 432 F.2d 621 (1970). It is obvious that the phones involved were part of a public system, since plaintiff Murphy was calling plaintiff Gerrard from outside the hospital using the Illinois Bell system. It is equally clear that conversations between a client and a lawyer are not only private but may be privileged. In the instant case, the interceptions were surreptitious and not in the ordinary course of business unless defendants can establish that it is their ordinary course of business to intercept communications between patients and their counsel, a practice which would not be justified even if customary. In any event, most of the foregoing questions of fact would be affirmative defenses and not elements of the plaintiffs' case. The facts alleged by plaintiffs in their complaint, if proved, would entitle them to recover civil damages for violation of 18 U.S.C. § 2511.

### Actual Damage

■ Title 18 of the United States Code, section 2520, authorizes actual damages in the amount of $1,000. Defendants claim that "grave emotional harm" does not come within this section. They cite no authority for this proposition. Legislative history indicates that the scope of the remedy provided by the section is intended to be comprehensive and exclusive. 1968 U.S.Code Cong. & Admin.News p. 2196. No exclusions are indicated. We hold, therefore, that if grave emotional harm can be demonstrated by plaintiffs, they are entitled to recover. In any event, their allegations state a claim under § 2520.

### Punitive Damages

■ Similarly, defendants' claim that punitive damages may not be awarded unless actual damages are present is un-

founded. The legislative history indicates that punitive damages are intended to be awardable where malice is shown. 1968 U.S.Code Cong. & Admin.News p. 2196. The instant facts certainly present the possibility that the interception(s) in question were perpetrated maliciously. The motion to dismiss on this ground is denied.

### State Action

■ In order for an alleged deprivation to be actionable under § 1983, the plaintiffs must establish that the defendants were acting under color of state law. The plaintiffs, relying principally upon this court's decision in *Holmes v. Silver Cross Hospital of Joliet, Illinois,* 340 F.Supp. 125 (N.D.Ill.1972), argue that there is a sufficient element of state action present here by reason of Mrs. Gerrard's admittance and retention in the hospital purportedly under the provisions of the Illinois Mental Health Laws.

■ In the face of emerging decisional law running *contra* to *Holmes* and seriously eroding its precedential effect, we find that the plaintiffs have failed to establish jurisdiction under § 1983. Concerning § 1983's coverage of a public utility, the Supreme Court in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, p. 350, 95 S.Ct. 449, p. 453, 42 L.Ed.2d 477 (1974) said the following:

> The mere fact that a business is subject to state regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment (footnote omitted) [*Moose Lodge No. 107 v. Irvis,* 407 U.S. 163] at 176–177, 92 S.Ct. 1965, 32 L.Ed.2d 627. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so.

■■ In order to establish state action for purposes of the Fourteenth Amendment, the kind of symbiotic relationship between the private party and the State is required in which the State

has so far insinuated itself into a position of interdependence that it is a joint participant in the enterprise. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In other words, "the inquiry must be whether there is sufficient close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson, supra,* 419 U.S. at 351, 95 S.Ct. at 453. The Seventh Circuit has recently held, *Doe v. Bellin Memorial Hosp.,* 479 F.2d 756 (7th Cir. 1973), in passing on whether an action could be maintained under § 1983 to enjoin a private hospital receiving federal subsidies from denying abortions, that (p. 761):

> Unlike the fact situation in *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), on which plaintiffs place heavy reliance, this record does not reflect any governmental involvement in the very activity which is being challenged. We find no basis for concluding that by accepting Hill-Burton funds the hospital unwittingly surrendered the right it otherwise possessed to determine whether it would accept abortion patients.

This more direct participation rule has been applied by other circuits. Judge Friendly, for instance, observed in *Powe v. Miles,* 407 F.2d 73 at 81 (2d Cir. 1968):

> . . . [T]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff, but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint.

Likewise, the Tenth Circuit required a "causal connection between the state conduct and plaintiff's injury," in *Ward v. St. Anthony Hosp.,* 476 F.2d 671, 676 (10th Cir. 1973). In *Slavcoff v. Harrisburg Polyclinic Hosp.,* 375 F.Supp. 999, 1001 (M.D.Pa.1974), the court found that the "state must be intertwined in the very activity which caused plaintiff's injury."

Applying the standard reflected by the aforementioned cases, we do not find that the plaintiffs have alleged the requisite involvement by the state in the wrongful conduct at issue here. Regardless of the extent to which the defendants receive governmental support, or the degree of government regulation, unless the state activity or involvement related to the alleged interception in question, the instant cause of action is not actionable under § 1983. Since there is no allegation that the state, either through neglect or failure to properly regulate the defendant, sanctioned or gave tacit approval to the defendants' course of conduct, the defendants cannot be subject to federal jurisdiction under § 1983.

An order will enter denying defendants' motion to dismiss plaintiffs' claims under 18 U.S.C. § 2510 et seq., and granting their motion to dismiss plaintiffs' claim under 42 U.S.C. § 1983.