# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SMOKEY DEE CRUTCHER-BEY,

        Defendant-Appellant.

UNPUBLISHED
June 21, 2016

No. 323975
Macomb Circuit Court
LC No. 2014-001350-FC

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of armed robbery, MCL 750.529, and two counts of unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant to 180 to 360 months' imprisonment for the armed robbery conviction and 120 to 180 months' imprisonment for each unlawful imprisonment conviction. For the reasons provided below, we affirm.

## I. EVIDENTIARY HEARING

Defendant argues that the trial court abused its discretion when it denied his motion for an evidentiary hearing for his claim of ineffective assistance of counsel. We disagree.

This Court reviews a trial court's decision on whether to conduct an evidentiary hearing for an abuse of discretion. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). A trial court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

The facts supporting a claim of ineffective assistance of counsel must either exist in the trial record or be established in an evidentiary hearing on the issue. *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). An evidentiary hearing, or a *Ginther* hearing, is appropriate when the defendant's ineffective assistance of counsel claim depends on facts not of record. *Id*. However, a *Ginther* hearing is only warranted if the defendant is able to show a potentially meritorious ineffective assistance of counsel claim for which resolution requires further factual development. See *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (denying the defendant's request for remand for an evidentiary hearing when the defendant failed to provide an adequate reason for the request). In seeking a hearing, it is

-1-

defendant's burden to show that further elicitation of facts would advance his position. See *People v McMillan*, 213 Mich App 134, 142; 539 NW2d 553 (1995).

The trial court did not abuse its discretion when it denied defendant's request for a *Ginther* hearing because defendant failed to prove that such a hearing was necessary for the trial court to address any of defendant's ineffective assistance of counsel claims. Indeed, defendant's motion for a new trial and for a *Ginther* hearing was devoid of any argument regarding the evidence he intended to present at an evidentiary hearing or the errors of defense counsel he could only prove through the presentation of additional evidence. Defendant's motion was supported only by a 16-page document, which apparently was not produced by counsel, that simply presented a litany of concerns or questions regarding what occurred during trial, including allegations that trial counsel's performance was deficient. As the prosecutor correctly argues, the list of errors precisely tracks the trial transcript, and the facts supporting each alleged error were clearly gleaned from the existing court record. Additionally, when asked at the motion hearing to articulate what evidence defendant would present at an evidentiary hearing that was not already contained in the record, defendant was unable to provide an adequate response. It was defendant's burden to make some showing that a hearing was necessary to develop the facts related to his ineffective assistance of counsel claim. The trial court was not obligated to hold a hearing when defendant failed to provide an offer of proof supporting the necessity of such a hearing and defendant's motion for a new trial could properly be addressed without one.

## II. CONTENTS OF TELEPHONE CONVERSATION

On appeal, defendant argues that the trial court erred when it denied his request to suppress any evidence of the contents of a telephone conversation he made to his alibi witness while he was in custody at the police department. We disagree.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376 (2001). The underlying constitutional issues, including whether a Fourth Amendment violation occurred, are reviewed de novo. *People v Gillam*, 479 Mich 253, 260, 734 NW2d 585 (2007). To the extent we find that constitutional error has occurred, "[w]e review preserved issues of constitutional error to determine whether they are harmless beyond a reasonable doubt." *People v Dendel (On Second Remand)*, 289 Mich App 445, 475; 797 NW2d 645 (2010). "A constitutional error is harmless if [it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id*. (quotation marks and citations omitted).

The Fourth Amendment serves to safeguard an individual's privacy from unreasonable governmental intrusions. *People v Taylor*, 253 Mich App 399, 403; 655 NW2d 291 (2002). A defendant may challenge the admission of evidence obtained by governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. *Rakas v Illinois*, 439 US 128, 143; 99 S Ct 421; 58 L Ed 2d 387 (1978). To determine whether a person had a reasonable expectation of privacy, it must be determined whether the person had a subjective expectation of privacy and whether that expectation was one that society recognizes as reasonable. *People v Collins*, 438 Mich 8, 18; 475 NW2d 684 (1991).

In order to establish a Fourth Amendment violation with regard to a telephone conversation, a defendant must have had a reasonable expectation of privacy in that conversation. *People v Bell*, 131 Mich App 586, 588; 345 NW2d 652 (1983). Michigan courts have specifically considered the expectation of privacy in a telephone conversation made from a police station. In *People v Tebo*, 37 Mich App 141, 144-145; 194 NW2d 517 (1971), this Court considered whether the defendant had an expectation of privacy when he made a phone call from the booking desk of a county jail. This Court held that defendant's telephone conversation had been improperly intercepted by an officer, who had picked up the extension, because there was "nothing in the record which indicates that the defendant should have known someone was listening in." *Id*. at 149. In contrast, this Court held in *People v DeGeer*, 140 Mich App 46, 47-48; 363 NW2d 37 (1985), that the defendant did not have a reasonable expectation of privacy because a sign located near the telephone warned him that all telephone conversations would be recorded and placed him on notice that his conversation would be monitored. Further, this Court has held that a defendant has no reasonable expectation of privacy in a telephone conversation made in the presence of police officers that might easily overhear what is being said. *Bell*, 131 Mich App at 587. Indeed, the United States Supreme Court has clearly explained that "conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable," *Katz v United States*, 389 US 347, 361; 88 S Ct 507; 19 L Ed 2d 576 (1967), and our Supreme Court has confirmed that what a person knowingly exposes to the public is not subject to Fourth Amendment protection, *People v Catania*, 427 Mich 447, 462; 398 NW2d 343 (1986).

Here, Officer Chad Finkbeiner, the detective in charge of the armed robbery investigation, testified regarding the contents of a recorded phone conversation defendant had with his alibi witness, Aerian Craig. Specifically, Finkbeiner only testified regarding two statements the alibi witness made to defendant. However, defendant could not have had an actual, subjective expectation of privacy when he made a telephone call as an arrestee from the police department while in the presence of Finkbeiner. Although the record is unclear on whether defendant was put on affirmative notice that his conversation might be electronically recorded, defendant chose to make a telephone call in the presence of an officer who could easily overhear what was being said. He was certainly on notice that Finkbeiner might be listening to the conversation. Because defendant did not have a reasonable expectation of privacy in the contents of his telephone conversation, his Fourth Amendment rights were not violated, and the trial court did not abuse its discretion when it allowed Finkbeiner to testify regarding that conversation.

Moreover, even if we were to find that defendant's rights were infringed upon, the constitutional error was harmless beyond a reasonable doubt because a rational jury would have found defendant guilty absent any error. Finkbeiner only testified to two statements made by Craig during the conversation, each of which suggested that she was planning to fashion an alibi defense for defendant. In light of the overwhelming evidence presented at trial against defendant, it is beyond any reasonable doubt that the jury would have believed Craig, who was defendant's girlfriend and an obviously interested witness, when she claimed that defendant was with her during the time of the armed robbery. This is especially true for two reasons: (1) during the time of the robbery, defendant's cell phone was tracked to being near the location of the robbery—not at the home where Craig claimed defendant and she were, and (2) Craig was unable to explain why she directed eight separate phone calls and text messages to defendant

during that same time period. The trial court's decision to allow Finkbeiner's rebuttal testimony clearly did not affect the outcome of the case, and any violation of defendant's purported right to privacy was therefore harmless.

## III. VOICE IDENTIFICATION TESTIMONY

Defendant claims that the trial court erred when it allowed evidence regarding Wisam Noori's voice identification of defendant without requiring the proper foundation. Again, we disagree.

Defendant failed to preserve this issue for appeal by objecting to the admission of Noori's identification of defendant's voice at trial. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). This Court reviews unpreserved evidentiary issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). A plain error is one that is clear or obvious, and defendant must have been prejudiced by the plain error. *Id*. at 763. Lastly, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *Id*. at 763-764 (quotation marks and alterations omitted).

Testimony identifying a person's voice is permissible and may be sufficient to identify the person as the perpetrator of a crime. *People v Bozzi*, 36 Mich App 15, 19-22; 193 NW2d 373 (1971). Voice identification testimony must be "reasonably positive and certain," and the identifying witness must have sufficient knowledge of the voice. *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983). This knowledge may be based on some peculiarity of the voice or familiarity with the voice. *People v Murphy (On Remand)*, 282 Mich App 571, 584; 766 NW2d 303 (2009); *Bozzi*, 36 Mich App at 22. It is up to the trier of fact to determine credibility and decide how much weight to place on a witness's voice identification. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *Bozzi*, 36 Mich App at 22.

Defendant claims that the trial court's admission of testimony regarding Noori's voice identification was improper because Noori admitted that he only "kind of recognized the [armed robber's] voice," and that he had no idea who the armed robber was during the commission of the crime. According to defendant, Noori's admissions provided proof that his voice identification was not "positive or certain." Defendant mischaracterizes the requirements for voice identification testimony. Such testimony from a witness must be *reasonably* positive or certain, and Noori's testimony met this requirement. Noori explained that he had recognized the voice of the armed robber as a regular customer who worked for a specific nearby business and cashed paychecks at the gas station but could not remember the customer's name on the day of the robbery. The day after the robbery, however, Noori remembered that the voice belonged to a customer with a distinctive sounding name, like "Snakey, Snarkey, Stinkey, [or] Smokey." Noori's identification of the armed robber's voice as belonging to a regular customer of the gas station, his memory that the customer was an employee of a specific workplace, and his description of the context in which Noori had previously encountered the armed robber's voice rendered his ultimate identification reasonably certain, even in light of his failure to recall the man's name until the day after the robbery.

Noori's testimony also illustrated that he had sufficient knowledge of the armed robber's voice to allow him to make the identification. Noori testified that defendant had been a regular customer, cashing his paycheck every Friday with Noori, who always worked the same shift. Noori said that he often spoke with defendant in "normal" voices as he cashed defendant's paychecks and was familiar with the sound of his voice. Noori admitted that he had not recognized the armed robber's voice at first, that he was not trained in voice recognition, and that he had not seen defendant in the gas station cashing a check for more than a month prior to the armed robbery. However, any shortcomings of Noori's identification go to the weight and credibility of his identification testimony, not the admissibility, and were properly left for the jury's consideration.

## IV. SUFFICIENCY OF THE EVIDENCE—UNLAWFUL IMPRISONMENT

Defendant contends that there was insufficient evidence to support his conviction for the unlawful imprisonment of Dennis Stone, a customer of the gas station during the armed robbery. We disagree.

We review challenges to the sufficiency of evidence de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). This Court must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found each element of the charged crimes proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). We resolve conflicts in the evidence in favor of the prosecution, and will not interfere with the trier of fact's determinations regarding the weight of evidence and the credibility of the witnesses. *Unger*, 278 Mich App at 222.

Pursuant to MCL 750.349b(1)(a), defendant was convicted of two counts of unlawful imprisonment, one for victim Noori and one for victim Stone. For a conviction of unlawful imprisonment under this statutory subsection, the prosecutor must prove that defendant "knowingly restrain[ed] another person" and "[t]he person [was] restrained by means of a weapon or dangerous instrument." *People v Kosik*, 303 Mich App 146, 151-152; 841 NW2d 906 (2013). The unlawful imprisonment statute defines "restrain" as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). Such restraint need not last for any particular period of time. MCL 750.349b(3)(a).

Defendant does not challenge his unlawful imprisonment conviction with regard to Noori. Defendant only argues that his conviction for the unlawful imprisonment of Stone lacked sufficient evidentiary support. Specifically, defendant asserts that there was insufficient evidence to prove that defendant used "a weapon or dangerous instrument." Defendant relies on the fact that only BB guns were later found at defendant's house and that the felony-firearm and felon-in-possession-of-a-firearm charges were dismissed. However, these firearm statutes require a true "firearm," MCL 750.227b(1); MCL 750.224f(1), which is different than the unlawful imprisonment statute, which simply requires "a weapon or dangerous instrument." Defendant wholly fails to acknowledge this critical distinction and offers no argument or

authority as to why, assuming these BB guns were the ones used during the robbery, these BB guns would not qualify, at a minimum, as "dangerous instrument[s]." Defendant's failure to properly brief the issue results in it being abandoned. *People v Smith*, 439 Mich 954 (1992). In any event, we conclude that a BB gun is "a weapon or dangerous instrument." In this case, neither the term "weapon" nor the term "dangerous instrument" is defined by the statute, and this Court may therefore look to the dictionary definition of those terms. *People v Lange*, 251 Mich App 247, 253; 650 NW2d 691 (2002). The dictionary definition of the term "weapon" is "any instrument or device used for attack or defense in a fight or in combat" and "anything used against an opponent, adversary, or victim." *Random House Webster's College Dictionary* (1997); see also *Lange*, 251 Mich App at 256 (noting the same definition). The term "dangerous," as part of "dangerous instrument," is defined as "full of danger or risk" or "able or likely to cause physical injury." *Random House Webster's College Dictionary* (1997). Using these definitions, it is clear that a BB gun would constitute a "dangerous instrument" because, although it propelled BB pellets as opposed to bullets, it was "able or likely to cause physical injury."

Defendant also avers that without Stone's testimony, the jury could not have concluded that Stone was restrained against his will. However, the jury saw the video of the armed robbery, which clearly depicted defendant pointing a gun at Stone as Stone dropped to his knees and lowered his head. Defendant forced Stone up and led him, while carrying a gun, to the walk-in cooler in which defendant had already trapped Noori, and shut Stone inside. This evidence is clearly sufficient to support the inference that Stone did not consent to the restraint.

Therefore, there was sufficient evidence to support defendant's conviction of unlawful imprisonment with respect to Stone.

## V. CUMULATIVE ERROR

Defendant argues that he is entitled to reversal because the cumulative effect of the aforementioned errors committed by the trial court significantly undermined confidence in the verdict's reliability. Again, we disagree.

We review this issue "to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007), citing *People v Knapp*, 244 Mich App 361, 387-388; 624 NW2d 227 (2001). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. "In making this determination, only actual errors are aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). If the defendant has not established any errors, then reversal is not warranted. *People v Brown*, 279 Mich App 116, 146; 755 NW2d 664 (2008), citing *Dobek*, 274 Mich App at 106. Here, as already discussed in this opinion, defendant has failed to establish any error. Thus, there are no actual errors that can aggregate, and defendant's claim for cumulative error must be rejected.

## VI. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court, contrary to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), engaged in judicial fact-finding when it assessed offense variables (OVs) 1, 8, 9, and 13 at sentencing. We disagree. Because defendant did not raise this specific issue at the trial court, we review this unpreserved issue for plain error affecting defendant's substantial rights. *Id.* at 392.

At the outset, defendant appears to misunderstand *Lockridge*'s central holding. Contrary to defendant's assertion, it is not impermissible for a judge to engage in fact-finding.[1] As this Court has explained:

> We reiterate that judicial fact-finding remains an important component of Michigan's sentencing scheme post-*Lockridge*. Although the sentencing guidelines are no longer mandatory, they remain a highly relevant consideration in a trial court's exercise of sentencing discretion. *Lockridge* simply requires that where, as here, a trial court was not aware at the time of sentencing that the sentencing guidelines were advisory, we consider whether OVs were scored based on facts necessarily found by the jury or admitted by defendant, and whether, applying *Lockridge*, a remand is required. [*People v Jackson (On Reconsideration)*, ___ Mich App ___; ___ NW2d ___ (Docket No. 322350, issued December 3, 2015), slip op, pp 11-12 (citations and quotation marks omitted).]

In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are unconstitutional to the extent that judges were bound to sentence within the guidelines range based on the scoring of the offense variables that worked to increase the floor of the minimum guidelines range. *Lockridge*, 498 Mich at 364. The concern is that when a judge makes such findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding, a defendant's Sixth Amendment right to a jury trial is violated. *Id.* The Court held that in order to avoid any Sixth Amendment violation, Michigan's sentencing guidelines are to be deemed advisory, instead of mandatory. *Id.* at 391. However, sentencing courts must continue to consult the guidelines and " 'take them into account when sentencing.' " *Id.*, quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

> In determining whether there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced. If the answer is "yes," then a defendant cannot establish any plain error. If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, the court would have imposed a materially different sentence. If the court determines that it would have imposed a

---

[1] Defendant suggests that even after remanding for a *Lockridge* violation, the sentencing judge is prohibited from engaging in any fact finding, which as detailed herein is incorrect.

> materially different sentence, then it shall order resentencing. [*Jackson*, ___ Mich
> App at ___ (slip op at 12) (citations and quotation marks omitted).]

It is also important to note that defendant does not challenge on appeal that the trial court erred in its scoring of any of the OVs. Instead, defendant merely claims that the facts supporting the scoring of these OVs were not necessarily found by the jury or admitted by defendant.[2]

## A. OV 1

The trial court scored OV 1 at five points, which involves the "aggravated use of a weapon." MCL 777.31(1). A court is required to score five points when, during the commission of the charged crime, "[a] weapon was displayed or implied." MCL 777.31(1)(e). Indeed, OV 1 is assessed at five points even when the offender merely "used an object to suggest the presence of a weapon." MCL 777.31(2)(c).

The court's assessment of five points for this OV was necessarily found by the jury's verdict. The jury convicted defendant of armed robbery, a conviction which necessitated a finding that defendant "either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon." *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007). This language precisely tracks the requirement of MCL 777.31(1)(e), which directs the trial court to assess five points for OV 1 when a weapon was "displayed or implied." The facts necessary to support the trial court's assessment of OV 1 were therefore found by a jury beyond a reasonable doubt, and the scoring of this OV does not implicate any of the *Lockridge* concerns defendant raises.

## B. OV 8

The trial court scored 15 points for OV 8, which involves "asportation or captivity." MCL 777.38(1). A court properly scores 15 points when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a).

Finding that "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense" was necessarily determined by the jury. The jury found beyond a reasonable doubt that defendant unlawfully imprisoned Noori; and in this instance, *any* amount of imprisonment would have been beyond the time necessary to commit the scored offense of armed robbery. Therefore, the trial court's scoring of 15 points for this OV did not violate defendant's Sixth Amendment right.

---

[2] In doing so, defendant makes the curious assertion in his brief on appeal that "a jury did not find beyond a reasonable doubt [the facts underlying the scoring of] these variables as this was a plea-based conviction." But these were not plea-based convictions, as defendant was convicted pursuant to a jury trial.

## C. OV 9

The trial court scored OV 9 at 10 points. "Offense variable 9 is number of victims" and is properly assessed at 10 points when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). As our Supreme Court has noted, "in a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life." *People v Sargent*, 481 Mich 346, 350 n 2; 750 NW2d 161 (2008). Here, the jury found that, during the course of robbing Noori, defendant unlawfully imprisoned Stone and used "a weapon or dangerous instrument" in the process. Thus, the jury's verdict supports the finding that there were two victims who were placed in danger of physical injury or death during the robbery of Noori.

## D. OV 13

"Offense variable 13 is continuing pattern of criminal behavior." MCL 777.43. OV 13 should be assessed at 25 points when "[t]he offense was part of a pattern of felonious criminal activity involving three or more crimes against a person." MCL 777.43(1)(c). A pattern of criminal activity may be based on multiple concurrent offenses arising from a single event. *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). When a trial court assesses this variable, it is required to count "all crimes within a 5-year period, including the sentencing offense . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

The trial court's assessment of OV 13 did not require judicial fact finding. The jury found defendant guilty beyond a reasonable doubt of armed robbery and two counts of unlawful imprisonment. All three of these convictions were for crimes against a person. MCL 777.16y; MCL 777.16q. In other words, the jury necessarily found that defendant committed three or more crimes against a person within a five-year period beyond a reasonable doubt.

## E. ALL CHALLENGED OV SCORES WERE SUPPORTED BY JURY VERDICT

As noted, all of the challenged OV findings were necessarily found by the jury. And because the jury's findings were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced, defendant cannot establish any plain error. *Jackson*, ___ Mich App at ___ (slip op at 12).

Affirmed.


/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello