PEOPLE v WARNER

Docket No. 57767. Argued October 7, 1976 (Calendar No. 12).—Decided October 4, 1977.

Dale Warner was charged with possession and use of heroin. Police raided a motel room where they arrested the defendant after being informed by the motel's telephone operator that she had overheard a telephone conversation between an outside male caller and a female occupant of the motel room who said "I've got drugs". Police officers went to the motel, saw a man enter the room, and listened outside the room and overheard conversation about drug traffic before entering. They found the defendant, the female occupant and another man in the room.

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 748.

74 Am Jur 2d, Telecommunications § 209 *et seq.*

[2] 74 Am Jur 2d, Telecommunications § 216.

[3] 29 Am Jur 2d, Evidence §§ 429, 433.

[4] 74 Am Jur 2d, Telecommunications §§ 175, 209.

[5] 29 Am Jur 2d, Evidence §§ 418, 425.

[6] 29 Am Jur 2d, Evidence §§ 431, 434.

74 Am Jur 2d, Telecommunications § 212.

[7] 29 Am Jur 2d, Evidence §§ 428–435.

[8] 29 Am Jur 2d, Evidence §§ 429, 431.

[9] 29 Am Jur 2d, Evidence §§ 431, 434.

[10] 68 Am Jur 2d, Searches and Seizures §§ 37, 41–43.

[11] 68 Am Jur 2d, Searches and Seizures §§ 60–62.

[12] 29 Am Jur 2d, Evidence § 415.

68 Am Jur 2d, Searches and Seizures §§ 41, 42.

[13, 22] 68 Am Jur 2d, Searches and Seizures §§ 42, 62.

[14] 16 Am Jur 2d, Constitutional Law §§ 544–547.

[15, 16] 74 Am Jur 2d, Telecommunications § 217.

[17] 74 Am Jur 2d, Telecommunications §§ 209, 210.

[18] 68 Am Jur 2d, Searches and Seizures §§ 2, 18, 100.

[19] 68 Am Jur 2d, Searches and Seizures §§ 35, 36.

[20] 68 Am Jur 2d, Searches and Seizures §§ 2–6.

[21] 29 Am Jur 2d, Evidence § 408 *et seq.*

[23] 29 Am Jur 2d, Evidence § 431.

[24] 29 Am Jur 2d, Evidence § 266.

[25] 30 Am Jur 2d, Evidence §§ 1091, 1125.

They saw the defendant throw toward the toilet bowl a syringe which was later found to contain heroin, a bottle cap with a burned top, and pieces of metal foil. The parties stipulated at a rehearing on a motion to suppress evidence obtained in the raid that the operator intentionally intercepted the conversation but at the time of the raid and through the preliminary proceedings she claimed that the eavesdropping was accidental. The Ingham Circuit Court, Donald L. Reisig, J., granted, on rehearing, motions to suppress the evidence on the ground that it was obtained through illegal interception of a telephone conversation and to quash the information. The Court of Appeals, Quinn, P. J., and D. E. Holbrook and D. F. Walsh, JJ., reversed and remanded for trial (Docket No. 21127). Defendant appeals. *Held:*

The judgment of the Court of Appeals is affirmed by an equally divided Court.

Justice Williams, voting to affirm, wrote:

1. Intentional eavesdropping on the telephone conversation and divulging its contents violated both state and Federal law. At least as to the exclusion of evidence, which is specifically covered by the Federal wiretapping statute but not by the Michigan statute, Congress has pre-empted the field. The right to suppression of evidence under statutory law or the Fourth Amendment is personal to the "aggrieved" person, that is the one whose right to privacy was violated. There is no testimony that the defendant participated in the intercepted call, only that the outside caller was male. The defendant argues that circumstantial evidence shows that he was the caller, but the argument is not supported by the record and was rejected by the trial court. Therefore, the overheard telephone conversation was admissible into evidence. The defendant cannot indirectly attack the admissibility of the evidence which he lacks standing to attack directly. Beginning with the initial interception, the only illegalities were the intentional eavesdropping and divulgence of the intercepted message. The defendant does not become an aggrieved person whose right to privacy was violated by these illegalities solely by the subsequent seizure from and introduction of evidence against him.

2. In the instant case the police had probable cause to conduct the search not only from the overheard telephone message, which the defendant has no standing to challenge, but also in the corroborating evidence adduced by police listening outside before raiding the motel room. The urgency of the situation, the transfer of possession and potential use of drugs which was reported about to occur within 15 to 30 minutes

from the time the police were called, and in addition the potential destructibility of the drugs, are sufficient exigent circumstances to obviate the necessity for a search warrant.

3. There is no evidence on the record that the operator told police that she had intentionally intercepted the call or that the police had reason to so believe. In fact, the operator did not admit to the prosecution that the eavesdropping was intentional until during the rehearing on the motion to suppress the evidence and to quash the information, and the court had found that the eavesdropping was accidental until then. The evidence was not so tainted by discovery at the hearing that it was illegally obtained as to warrant suppression because it was too late to have affected the police action in acquiring that evidence. The illegality was purely private so there was no police misconduct to deter by suppressing the evidence. The police relied in good faith on a source which they had no reason to question.

Justice Coleman, with Justice Ryan, agreed that the judgment of the Court of Appeals should be affirmed. The police conduct does not warrant suppressing the evidence. They committed no illegal act. They had probable cause to investigate, to enter the motel room, and to arrest the defendant and seize the evidence. The motel switchboard operator was a private individual who had no connection with the police, nor was her monitoring of the telephone conversation authorized by the police. Even if her conduct violated a statute, defendant has not demonstrated that he has standing to challenge that violation.

Justice Fitzgerald, joined by Chief Justice Kavanagh, adopted the opinion of the trial court as his own and would find that the defendant has standing to challenge the interception of the telephone call and its attendant consequences.

1. The rule of law and constitutional and legal protections are not designed to release guilty people from jail cells, but to protect the rights of the people against governmental abuses. If there has been an illegal interception of a conversation without the consent of the sender, the Federal Communications Act forbids that communication to be divulged by testimony in state court proceedings. Congress has authorized wiretapping under very limited circumstances where warrants were sought, and it is the avowed policy of Congress that the private conversations of others cannot be overheard except through inadvertence or a properly authorized warrant. Under the act no state may make laws less stringent than the Federal regulations in this area. The court cannot be a party to a violation of these legislative mandates.

2. The defendant has standing to attack the search and seizure of the motel room because he was on the premises at the time of the contested search and seizure, and he was charged with an offense that includes as an essential element possession of the seized evidence. Although the defendant was not an "aggrieved person" permitted under the Federal Communications Act to attack the initial illegal interception, that interception and its divulgence to police was the direct cause of the ultimate search and seizure.

3. The occupant of the motel room had been registered there for three or four days; there was no reason to believe that if the raid was not made in 15 or 20 minutes the drugs would have dissipated. The unavailability of judges during a luncheon hour may have been a practical problem in obtaining a search warrant, but it could have been overcome. The United States Supreme Court has extended the protection of the Constitution to areas of privacy, broadly stated, where people have a reasonable expectation of privacy. It is not a property right but one that belongs to any citizen in a free society. Courts exclude illegally obtained evidence, regardless of whether it is probative, to protect the rights of all people. The primary taint of the illegal interception was not so attenuated as to free the search and seizure of that taint.

Justice Levin is of the opinion that there should be further fact-finding on whether the defendant was an aggrieved person under the statute. The circuit judge erred in concluding, as a matter of law, that the defendant was not an aggrieved person because he had not admitted that he was a party to the conversation. There was sufficient circumstantial evidence to establish prima facie that the defendant was a party to the telephone conversation. The evidence derived from the interception of that conversation should be suppressed if the trial court finds that the defendant was a party to the intercepted conversation.

Justice Blair Moody, Jr., took no part in the decision of the case.

Affirmed by an equally divided Court.

65 Mich App 267; 237 NW2d 284 (1975) affirmed.

### DECISION OF THE COURT

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.

A decision by the Court of Appeals that a trial court erroneously excluded evidence against a defendant which was obtained as a result of information from a private person who intentionally

listened to a telephone conversation between other persons, where the police had believed it to be an accidental overhearing, is affirmed by an equally divided Court.

OPINION FOR AFFIRMANCE BY WILLIAMS, J.

2. TELECOMMUNICATIONS—EVIDENCE—EAVESDROPPING—TELEPHONE CONVERSATION.

*Intentional eavesdropping by a motel telephone operator and divulgence to police of the contents of a telephone conversation violates both Michigan and Federal law (18 USC 2511 [1][c], 18 USC 2515; MCL 750.539c, 750.539e; MSA 28.807[3], 28.807[5]).*

3. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—EAVESDROPPING —FEDERAL STATUTE—PRE-EMPTION.

*A Federal eavesdropping statute pre-empts a Michigan statute at least as to the exclusion of evidence obtained by illegal wiretapping which is specifically covered by the Federal statute but not the state statute (18 USC 2515; MCL 759.539e; MSA 28.807[5]).*

4. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—EAVESDROPPING —STANDING—FEDERAL STATUTE.

*A Federal eavesdropping statute provides that a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed is an "aggrieved person" who may move to suppress evidence directly or indirectly obtained in violation of the statute (18 USC 2510[11], 18 USC 2518[10][a]).*

5. SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY—STANDING— FOURTH AMENDMENT—PRIVACY, RIGHT OF.

*Suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence; the right to suppression is personal to the one whose right to privacy was violated (US Const, Am IV).*

6. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—EAVESDROPPING —STANDING—FOURTH AMENDMENT.

*Silence of a state eavesdropping statute on the specific issue of standing to urge the suppression of evidence obtained in violation of the statute cannot be presumed to obviate the necessity of standing; the rule that Fourth Amendment rights are personal controls the state statute and therefore, the statute may be asserted only by a person whose right to privacy has been*

*invaded, a person termed "aggrieved" under the Federal eaves-dropping statute (US Const, Am IV; 18 USC 2510[11]; MCL 750.539e; MSA 28.807[5]).*

7. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—EAVESDROPPING —STANDING.

*A defendant had no standing to request the suppression of evidence obtained by an intentional interception by a motel telephone operator of a telephone call where he did not show that he was a party to the call or that his right of privacy was violated by the interception (US Const, Am IV; 18 USC 2510[11]; MCL 750.539e; MSA 28.807[5]).*

8. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—STANDING.

*A defendant cannot, as a matter of Federal law, attack indirectly the admissibility of evidence obtained as a result of an illegal interception of a telephone conversation which he has no standing to attack directly (US Const, Am IV).*

9. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—STANDING—PRI-VACY, RIGHT OF.

*A defendant whose right to privacy was not violated by illegal eavesdropping on a telephone conversation and divulgence of the intercepted message does not become a person whose right to privacy was violated solely by the subsequent seizure of evidence from him and its introduction against him which was obtained as a result of the interception of the telephone mes-sage.*

10. SEARCHES AND SEIZURES—WITHOUT A WARRANT—PROBABLE CAUSE —EAVESDROPPING.

*Police had probable cause for a search of a motel room without a warrant where they acted on information from a telephone conversation intercepted by the motel telephone operator that the room's occupant had drugs in her possession and would probably transfer or use them within 15 to 30 minutes from the time the police were called, police had no reason to believe that the operator had illegally intercepted the call, and police corroborated the information by listening to a conversation concerning drug traffic from the room next door (US Const, Am IV).*

11. SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY—EAVESDROP-PING.

*The fact that a prosecuting attorney learned at the time of a rehearing on a defendant's motion to suppress evidence that a telephone message was intentionally and therefore illegally*

intercepted by a motel telephone operator is not knowledge which would so taint evidence seized as a result of the intercepted message as to warrant its suppression because it was too late to have in any way affected the action of the police in acquiring the evidence when they had no reason to believe that the eavesdropping was intentional (US Const, Am IV).

12. SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY—EXCLUSIONARY RULE—EAVESDROPPING.

There is no reason to exclude evidence against a defendant which was obtained as the result of an illegal eavesdropping by a motel telephone operator on a conversation which was not shown to be an invasion of the defendant's right to privacy where the illegality was purely private, there was no police misconduct to deter by exclusion of the evidence because police had relied in good faith on a source which they had no reason to question, and they took the additional precaution of calling the prosecutor to inquire about the necessity for a search warrant (US Const, Am IV).

OPINION FOR AFFIRMANCE BY COLEMAN, J.

RYAN, J.

13. SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY—POLICE CONDUCT—TELECOMMUNICATIONS—EAVESDROPPING.

Police conduct does not warrant suppressing evidence seized in a motel room where the police committed no illegal act, they had probable cause to investigate and enter the motel room, and probable cause to arrest the defendant and seize the evidence; it is not important that police acted on information which was obtained by a private person who monitored a telephone conversation where she had no connection with the police and her monitoring was not authorized by any police agency, and where the defendant has not demonstrated that he has standing to challenge any alleged violation of a statute by the private person (US Const, Am IV).

OPINION FOR REVERSAL BY FITZGERALD, J.

KAVANAGH, C. J.

14. CONSTITUTIONAL LAW—CRIMINAL LAW.

The rule of law and constitutional and legal protections are not designed to release guilty people from jail cells, but to protect the rights of the people against governmental abuses.

15. TELECOMMUNICATIONS—EAVESDROPPING—TELEPHONE CONVERSATION—DIVULGENCE—EVIDENCE.

*A telephone conversation which has been illegally intercepted without the consent of the sender cannot, under the Federal Communications Act, be divulged by testimony in state court proceedings (47 USC 605).*

16. TELECOMMUNICATIONS—EAVESDROPPING—TELEPHONE CONVERSATION—PUBLIC POLICY.

*Congress authorized wiretapping in the Omnibus Crime Control and Safe Streets Act under very limited circumstances where warrants were sought; it is the avowed policy of Congress that the private conversations of others cannot be overheard except through inadvertance or a properly authorized warrant (82 Stat 197, 211, § 801; 18 USC 2510).*

17. TELECOMMUNICATIONS—EAVESDROPPING—PRE-EMPTION.

*No state may make laws less stringent than the Federal regulations concerning illegal wiretapping under the Federal Communications Act and the Omnibus Crime Control and Safe Streets Act (18 USC 2510; 47 USC 605).*

18. SEARCHES AND SEIZURES—STANDING—DRUGS AND NARCOTICS.

*A defendant charged with possession and use of heroin in a motel room had standing to challenge police search of the room and seizure of evidence where the defendant was present in the room at the time of the contested search and seizure and the offense charged included as an essential element possession of the evidence seized (US Const, Am IV).*

19. SEARCHES AND SEIZURES—WARRANTS.

*The law prefers a search warrant; searches made otherwise are exceptions to the mandates of the Constitution (US Const, Am IV).*

20. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—PRIVACY, RIGHT OF.

*The United States Supreme Court has extended the protection of the Constitution to areas of privacy, broadly stated, where people have a reasonable expectation of privacy; it is not a property right but one that belongs to any citizen in a free society (US Const, Am IV).*

21. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—EXCLUSIONARY RULE.

*Courts exclude evidence which is illegally obtained, regardless of whether it is probative, to protect the rights of all people.*

22. SEARCHES AND SEIZURES—CRIMINAL LAW—EVIDENCE—ADMISSIBIL-
    ITY—EXCLUSIONARY RULE—TELECOMMUNICATIONS—EAVESDROP-
    PING—TELEPHONE CONVERSATION.

    *Evidence which was obtained against a defendant as the direct
    result of an illegal eavesdropping by a motel telephone opera-
    tor on a conversation and without a search warrant should be
    excluded from evidence because the primary taint of the illegal
    interception was not so attenuated as to free the police search
    and seizure of that taint where there never would have been a
    search of the motel room and seizure of the evidence but for
    the illegality (US Const, Am IV).*

OPINION FOR REVERSAL BY LEVIN, J.

23. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—STANDING—
    AGGRIEVED PARTY.

    *A defendant's standing, as an aggrieved party, to object to the
    admission of evidence obtained as a result of illegal eavesdrop-
    ping on a telephone conversation may be established through
    circumstantial evidence other than the defendant's testimony
    or admission (18 USC 2510[11], 18 USC 2518[10][a]).*

24. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—STANDING.

    *Circumstantial evidence established a prima facie case that a
    defendant had standing as an aggrieved person under a Federal
    eavesdropping statute where there was testimony by a motel
    switchboard operator that a man had telephoned a certain
    motel room and had a conversation with the room's female
    occupant who said "I've got drugs", that the man apparently
    responded "I'll be there in 15 minutes", that within 30 minutes
    of the intercepted telephone call the defendant appeared at the
    motel room, and that the defendant later admitted to police
    having a conversation with the female occupant (18 USC
    2510[11]).*

25. TELECOMMUNICATIONS—EVIDENCE—ADMISSIBILITY—STANDING—
    QUESTION OF FACT.

    *The question whether to draw the inference from circumstantial
    evidence that a defendant was a party to a telephone conversa-
    tion, and thus an aggrieved party within the meaning of a
    Federal eavesdropping statute, is initially for the trier of fact
    (18 USC 2510[11]).*

*Frank J. Kelley*, Attorney General, *Robert A.
Derengoski*, Solicitor General, *Raymond L. Scodel-*

*ler,* Prosecuting Attorney, and *Lee W. Atkinson,* Chief Appellate Attorney, for the people.

*State Appellate Defender Office* (by *F. Martin Tieber* and *Roger L. Wotila,* of counsel) for defendant.

WILLIAMS, J. Defendant, charged with possession and attempted use of heroin, was arrested in a motel room as a result of a motel switchboard operator's divulgence to police of the contents of an intentionally intercepted telephone conversation. Defendant was neither shown to be a party to that conversation, nor present when it took place, and the police did not know or have reason to know that the interception was illegal.

Defendant in this Court contends that, under Michigan and Federal law, testimony of the woman who intercepted the message as well as testimony of police officers as to what they saw and heard outside the motel room should be suppressed along with the narcotics seized in the warrantless search of that room. He contends that the primary illegality was the intentional interception of the phone call, and that this precluded that testimony from being used in court and tainted the subsequent police action outside of and in the motel room.

As fall-back, defendant contends that even if the police did not know or have reason to know that the information given them at the time of search was illegal, they did know it at the time of the rehearing on the motion to suppress and therefore could not divulge it. Further defendant contends he has standing to invoke 18 USC 2518(10)(a)(i) because "circumstantial evidence * * * indicates that [he] was" a party to the conversation and

therefore an "aggrieved person" within the meaning of the Federal statute.

The prosecution claims that defendant does not have standing to challenge the illegal telephone interception, that there was no tainted nexus between the illegal intercept and the police raid and that there was probable cause for arrest for a felony being committed in the officers' presence, and for the seizure of the narcotics in connection therewith, and that there was not reasonable time to secure a warrant.

We hold that under Michigan and Federal statutory law, the interception of the telephone message was illegal, but defendant lacks standing to suppress it, and under Federal law, defendant lacks standing to challenge the divulgence and evidence resulting therefrom. We further hold that, although defendant has standing under Michigan law to challenge the resulting evidence based on lack of probable cause and failure to obtain a warrant, these challenges fail on the facts. The Court of Appeals is affirmed.

## I—Facts

Louise Auslander, co-manager of Motel 6, in connecting from the switchboard an outside call to room 235, registered to Nancy Witherspoon, overheard a female voice say, "I've got drugs", followed by the voice of the male caller.

Mrs. Auslander immediately called the Lansing police. When Sergeant Baylis arrived at the motel she advised him of overhearing the telephone call and that Nancy Witherspoon had been making and receiving numerous calls. Sergeant Baylis then called the prosecutor's office and reported what Mrs. Auslander had said. He was advised

that due to the noon hour there was not time to
get a warrant but that it "would be legally okay to
go to the room and enter without the search
warrant and seize the materials". Sergeant Baylis
then called for uniformed police to assist him.

Sergeant Baylis subsequently got a pass key
from Mrs. Auslander, walked past room 235 and
let himself into room 231. As he did so, he saw
Nancy Witherspoon admit defendant Warner into
room 235. Although he had known Ms. Wither-
spoon through prior encounters, he had not seen
her for over a year and did not recognize her at
the time.

We adopt the Court of Appeals description of the
facts from this point:

"The manager of the motel permitted Sergeant Baylis
and three other officers to occupy room 231. Through
the partially opened door of room 231, Sergeant Baylis
saw a male person stop at room 235. The person rapped
and was admitted. The police stationed themselves near
the door of room 235 and they overheard conversation
emanating therefrom concerning 'bags' or 'bindles', the
price of a 'quarter' and the effect of a 'hit'. Water was
heard running and they smelled something that
smelled like something burning. These observations
indicated to Sergeant Baylis that something related to
drug traffic was going on in the room and he decided to
enter.

"Sergeant Baylis inserted a passkey in the door of
room 235 but before he turned it, he heard a female
voice within say she had to go downstairs. Thereupon
Sergeant Baylis stepped away from the door without
turning the key and the door partially opened. It was
immediately closed again and an officer said, 'Police,
open up' and he kicked the door. Shortly, a voice within
said 'I'll open the door'. It was opened and the officers
entered.

"Inside, Officer Cross saw the bathroom door open
partially and he saw a male person (later identified as

defendant) peek out. Officer Cross approached the bath-room door; it closed and he forced it open. He observed defendant standing in front of the sink holding a syr-inge, a bottle cap and some tinfoil in his right hand. Defendant threw these articles toward the toilet and the syringe went into the toilet, but the bottle cap and tinfoil fell on the floor. Officer Cross retrieved all of the articles, and later the syringe proved to contain heroin. In plain view on a table, there was a small wooden box with the lid open. In it were visible small tinfoil packets which later proved to contain heroin.

"At the preliminary examination, defendant con-tested the admission in evidence of Mrs. Auslander's recitation of what she overheard of the telephone con-versation between Nancy Witherspoon and the male caller and the subsequent use of that information by Sergeant Baylis. It was and is defendant's position that by monitoring that call Mrs. Auslander violated the Federal and state eavesdropping statutes, 18 USC 2510 *et seq.;* MCLA 750.539 *et seq.;* MSA 28.807 *et seq.* Thus, defendant argues, the illegally obtained information was inadmissible, and under the 'fruit of the poisonous tree' doctrine, Sergeant Baylis could not legally use that information. If this evidence and the use thereof by Sergeant Baylis was barred, defendant contended there was no probable cause for the police to enter room 235, arrest defendant and seize the evidence in question.

"The district judge held that defendant was not an 'aggrieved person', as defined in 18 USC 2510(11), and that under the limitation found in 18 USC 2518(10)(a) defendant had no standing to raise the issue. The district judge further held that Mrs. Auslander over-heard 'I've got drugs' accidentally and that MCLA 750.539e; MSA 28.807(5) did not bar the admission of that portion of the telephone conversation overheard by Mrs. Auslander. The balance of what Mrs. Auslander overheard was barred by the district judge under the state statute last referred to. The district judge found probable cause for the officers to enter room 235 and to arrest defendant and to seize the evidence in question which was received in evidence.

"At the conclusion of the first hearing on the motions

to suppress and to quash, the trial judge affirmed the district judge on the issue of defendant not being an 'aggrieved person' under the Federal statute. Although expressing some doubts that Mrs. Auslander overheard any of the telephone conversation accidentally, the trial judge affirmed the district judge on the finding that 'I've got drugs' was overheard accidentally. This affirmance was based on the district judge's opportunity to see and hear the witness. For the foregoing reasons, the trial judge denied the motions to suppress and to quash.

"At the first session on rehearing, two former employees of Motel 6 testified that Mrs. Auslander had admitted to them that she had on occasion deliberately listened to telephone conversations between guests and outside callers. At the second session held June 13, 1974, the prosecuting attorney conceded that Mrs. Auslander had deliberately monitored the outside call to Nancy Witherspoon for reasons which Mrs. Auslander and the prosecuting attorney believed to be legitimate. The information which led to this concession was learned by the prosecutor that day. On the strength of this concession, the trial judge held that the evidence obtained from the monitored telephone conversation was illegally obtained and it was inadmissible. Without the evidence there was no probable cause to enter room 235 and to arrest defendant and to seize the evidence in question. The motions to suppress that evidence and to quash the information were granted." *People v Warner,* 65 Mich App 267, 270–273; 237 NW2d 284 (1975).

The people appealed this decision and the Court of Appeals reversed and remanded. That Court, relying on MCLA 750.539e; MSA 28.807(5), found that Sergeant Baylis did not know or reasonably should know that Mrs. Auslander had illegally overheard "I've got drugs". The Court found that, prior to Mrs. Auslander advising the prosecuting attorney on June 13, 1974 that she had deliberately eavesdropped, there was nothing in the record indicating that what she did was other than an accidental and legal occurrence. As a result of

this Sergeant Baylis had probable cause to proceed to room 235 for further investigation. The Court of Appeals further found that what was heard and observed outside room 235 established probable cause to enter the room and what they saw there in plain view was sufficient to justify the arrest and seizure of evidence.

## II—ISSUES

The first question before us is whether, admitting the intentional interception by Mrs. Auslander was illegal, evidence of the contents of that conversation can be suppressed by defendant.

The second question is whether the illegality of the interception is a basis upon which defendant can challenge the evidence subsequently acquired by the police on the afternoon in question.

## III—ILLEGALITY AND ADMISSIBILITY OF INTERCEPTED TELEPHONE CALL

It is clear that Mrs. Auslander's intentional eavesdropping violated both Michigan and Federal law. MCLA 750.539c; MSA 28.807(3) provides:

"Any person who * * * wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto * * * is guilty of a felony * * * ".[1]

18 USC 2511(1)(a) provides:

"any person who * * * willfully intercepts * * * any wire or oral communication * * * shall be fined * * * or imprisoned * * * ".

---

[1] We are not impressed with prosecutor's argument that a telephone switchboard is not included in "any device".

In divulging what she overheard Mrs. Auslander violated MCLA 750.539e; MSA 28.807(5) ("Any person who uses or divulges") and 18 USC 2511(1)(c) ("wilfully discloses"). More specifically, by testifying in court, Mrs. Auslander would violate 18 USC 2515:

"Whenever any wire or oral communication has been intercepted * * * no evidence derived therefrom may be received in any trial * * * if the disclosure of that information would be in violation of this chapter."

18 USC 2515 applies to evidence in a state as well as Federal trial. In *Lee v Florida,* 392 US 378; 88 S Ct 2096; 20 L Ed 2d 1166 (1968), city police wiretapped Lee's telephone and used the evidence obtained to convict him and two colleagues. "In affirming the convictions, the state appellate court said that 'there were no state or federal statutes applicable in Florida which would make wiretapping illegal and inadmissible in evidence * * * '." 392 US 378, 380. However, speaking of an earlier and much less specific statute,[2] the Supreme Court said:

"We disagree. There clearly *is* a federal statute, applicable in Florida and every other State, that made illegal the conduct of the Orlando authorities in this case. And that statute, we hold today, also made the recordings of the petitioners' telephone conversations inadmissible as evidence in the Florida court." 392 US 378, 380.

To the same effect, see *People v Tebo,* 37 Mich App 141; 194 NW2d 517 (1971). We hold, therefore,

---

[2] 47 USC 605:
"[N]o person not being authorized by the sender shall intercept any communication and divulge * * * such intercepted communication to any person * * * ."

that at least as to the exclusion of evidence which
is specifically covered by the Federal statute but
not the Michigan statute, Congress has pre-empted
the field.

However, in determining who can claim the
exclusion of intercepted telephone conversation
evidence, reference must be made not only to 18
USC 2515, but to 18 USC 2518(10)(a) and 18 USC
2510(11). Section 2518(10)(a) provides that "[a]ny
aggrieved person in any trial * * * may move to
suppress     * * * ".    Section     2510(11)    reads
" 'aggrieved person' means a person who was a
party to any intercepted wire or oral communica-
tion or a person against whom the interception
was directed".

The normal rule of statutory construction re-
quires that parts of a statute bearing on the same
subject should be construed together. Furthermore,
the legislative history of this statute confirms that
18 USC 2518(10)(a) and 18 USC 2510(11) were
intended by the Congress to be considered to-
gether.

S Rep No. 1097, 90th Cong, 2d Sess (1968); 2
United States Code Cong & Admin News (1968), p
2185 states in this regard:

"The provision [§ 2515] must, of course, be read in
light of section 2518(10)(a) discussed below, which de-
fines the class entitled to make a motion to suppress. It
largely reflects existing law. It applies to suppress
evidence directly *(Nardone v United States,* 302 US 379;
58 S Ct 275 [82 L Ed 314] [1937]) or indirectly obtained
in violation of the chapter. *(Nardone v United States,*
308 US 338; 60 S Ct 266 [84 L Ed 307] [1939]). There is,
however, no intention to change the attenuation rule.
See *Nardone v United States,* 127 F2d 521 (CA 2), *cert
den,* 316 US 698 (1942); *Wong Sun v United States,* 371
US 471; 83 S Ct 407 [9 L Ed 2d 441] (1963). Nor

generally to press the scope of the suppression rule beyond present search and seizure law."

See *United States v Bynum,* 513 F2d 533, 535 (CA 2, 1975).

This reading of the code is consistent with the Fourth Amendment. As the United States Supreme Court said in *Alderman v United States,* 394 US 165, 171–172; 89 S Ct 961; 22 L Ed 2d 176 (1969):

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing."

The right to suppression is personal to the one whose right to privacy was violated.

There is no testimony that defendant participated in the intercepted telephone call. The defendant's brief on appeal does not allege it in its statement of facts, saying only "Mrs. Auslander * * * received an outside call from a male caller * * * ", and the people's brief charges defendant "would have this Court so *infer* without his having ever voiced or supported the claim below, and without specifically averring the same now".

Defendant nonetheless argues the fact that circumstantial evidence shows he was the male caller. He says "the male allegedly responded that he would be there (at the motel) in 15 minutes" in response to the female voice saying she had drugs and that Sergeant Baylis testified he was outside room 235 about 15 minutes. But there are two problems with this argument. First, it does not

appear that what the male said is on the record. Second, a Greg Bailey was also in the room and he might have been the caller—Sergeant Baylis did not arrive immediately on the termination of the call. Finally, the trial court from its closer vantage after sympathetic review ruled defendant was not an aggrieved person and, in fact, had "not put himself in a position of admitting that he was a party to that intercepted telephone call".

Without opining whether or not the Federal statute pre-empts Michigan law as to the specific issue of standing, we find that the Michigan statute's silence on the subject cannot be presumed to obviate the necessity therefor. It must be assumed that the rule that Fourth Amendment rights are personal controls. *United States v Hodge,* 539 F2d 898, 902 (CA 6, 1976); *People v Joshua,* 32 Mich App 581, 585; 189 NW2d 105 (1971). Therefore, the Michigan statute too can be asserted in favor of any person, even if indirectly affected by a violation, but only if his or her right to privacy has been invaded. We hold that these are the same individuals as those termed "aggrieved" under the Federal statute; defendant is not such a person.

In short, defendant's case on the record fails as to any proof that he was the male caller. The cases he cites relative to the standing of home owners and persons present have no relevance to the telephone call which, according to defendant, occurred before his presence in the room.

We must conclude that while Mrs. Auslander illegally intercepted a call, defendant had no standing to request the suppression of the message because there was no evidence that he was a party to that call and his rights to privacy therefore were not shown to be violated. The answer to the first question consequently is that the "I've got

drugs" telephone message overheard by Mrs. Auslander was admissible into evidence.

## IV—Admissibility of Evidence Obtained Prior to and During the Search and Seizure in Room 235

In ruling upon the admissibility of evidence obtained subsequent to and as a result of the interception, as a matter of Federal law, we find that defendant Warner cannot attack indirectly that which he has no standing to attack directly. *Alderman v United States,* 394 US 165, 174; 89 S Ct 961; 22 L Ed 2d 176 (1969).

Beginning with the initial interception and throughout the subsequent course of events, the only illegalities were in the intentional eavesdropping and divulgence of the intercepted message. Defendant does not become a person whose right to privacy was violated by these illegalities solely by the subsequent seizure from and introduction of evidence against him. *Alderman v United States, supra,* 171–172.

The second illegality, divulgence of the "I've got drugs" interception to the police, was more nearly a proximate cause of the evidence sought to be suppressed than the interception itself, and the divulgence too was a crime, 18 USC 2511(1)(a) (willfully intercepts); 18 USC 2511(1)(c) (willfully discloses). However, this analysis does not obviate the fact that while the statute provides that the person who willfully discloses an illegal intercept is equally guilty with the person who willfully makes the interception, it specifically provides for the suppression only in favor of an aggrieved person. 18 USC 2518(10)(a) provides:

"Any aggrieved person in any trial, hearing, or pro-

ceeding in or before any court * * * may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom on the grounds that—

"(i) the communication was unlawfully intercepted * * * ."

As we have already indicated, an aggrieved person "means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed". 18 USC 2510(11). The illegality violated no personal right of defendant and he is not an "aggrieved" person; removal of the activity a step beyond the actual interception does not give him standing.

Defendant cites *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960), for two tests regarding standing to challenge the legality of police action; namely, whether the search was conducted in the presence of the accused and whether the accused was charged with a possessory offense. The *Jones* Court held that one who was on the premises and had a right to be there had standing to attack the lack of probable cause for the issuance of a search warrant.

We do not question the correctness of that decision, and if there were some infirmity in the police action as it related to defendant Warner, there is no doubt that he would be in a position to attack it.

In relying on *Jones,* however, defendant ignores the fact that there was probable cause to conduct the search in the instant case. This probable cause is found not only in the substance of the message conveyed to Officer Baylis by Mrs. Auslander, which defendant had no standing to challenge, but also in the corroborating evidence adduced by

Officer Baylis as he listened to the conversation from the room adjacent to room 235, see *Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959).

In the instant case, the illegalities were ones which did not negate the adequacy of probable cause as to defendant because the illegalities were not personal to him. This can be demonstrated by three recent cases in which warrants were deemed invalid because of basic infirmities as to one defendant. Searches pursuant to these invalid warrants, however, uncovered either evidence directly against a second defendant or led to evidence which established probable cause for warrants against a second defendant. In each case the court held that the second defendant had no standing to suppress the evidence against him because he personally had no standing to challenge the initial illegality. See *United States v Wright,* 524 F2d 1100 (CA 2, 1975); *United States v Scasino,* 513 F2d 47 (CA 5, 1975), and *Haina v State,* 30 Md App 295; 352 A2d 874 (1976). Defendant Warner is in the identical position to the second defendants in these cases.

Defendant does, of course, in addition to having standing to question probable cause, have standing under the Fourth Amendment to challenge the validity of the search as warrantless. This challenge, however, fails on the facts. The urgency of the situation, the transfer of possession and potential use of drugs being one which could and apparently did occur within 15 to 30 minutes from the time the police were originally called, in addition to the nature and potential destructibility of drugs, make this the type of case presenting sufficient exigent circumstances to obviate the necessity for a warrant. Compelling a search warrant in

cases such as this would so hinder the police as to preclude successful investigation.

Defendant argues that whatever the Federal law may be, under Michigan law the evidence secured in room 235 should be suppressed in a Michigan court. The argument is first that Mrs. Auslander made an illegal intercept; second that Officer Baylis in receiving information from her knew or should have known that it was illegally obtained; and third that, without the illegally received information, Officer Baylis and his colleagues would not have been outside room 235 in a position to hear the information on which they based their entry and gathering of the evidence in question.

We have already discussed the first part of the argument. The critical part is the second, for, if it is factually correct, it is arguable that Officer Baylis illegally received information that tainted his subsequent action. However, there is no evidence on the record that Mrs. Auslander told Sergeant Baylis that she had received her information illegally or that Sergeant Baylis had reason to so believe. Any such inference would be strongly rebutted by the fact she did not admit to the prosecution until during the rehearing on the motion to suppress the evidence and to quash the information that she had eavesdropped intentionally and the district judge had found Mrs. Auslander had overheard the "I've got drugs" accidentally and the circuit court had affirmed this before the prosecutor introduced Mrs. Auslander's belated admission. Consequently we find that Officer Baylis received Mrs. Auslander's information legally.[3] Further, the fact that the prosecutor knew

---

[3] Because of the facts of this case, we are not required to consider whether art 1, § 11 of the Michigan Constitution of 1963 applies. Art 1, § 11, relative to search and seizure, provides in pertinent part:

"The provisions of this section shall not be construed to bar from

at the time of the rehearing that the message was
intentionally and therefore illegally obtained is
not knowledge which would so taint the evidence
as to warrant suppression, because it was too late
to have in any way affected the action of the police
in acquiring the evidence.

Under these circumstances, there is no reason to
exclude the evidence in question. Examination of
the exclusionary rule dictates this result. The
exclusionary rule has a dual purpose: (1) protec-
tion of the right to privacy, and (2) deterrence of
police misconduct. Neither of these purposes would
be served by extension of the rule in this case.
First, as fully discussed, defendant on the record
has shown no invasion of his right to privacy.
Second, the deterrent aim of the rule would in no
way be served by holding it applicable to this
particular case. The most obvious reason for this is
that the illegality was purely private and there
was no police misconduct to deter. See *People v
Livingston,* 64 Mich App 247, 255; 236 NW2d 63
(1975); *People v Harry James Smith,* 31 Mich App
366, 374; 188 NW2d 16 (1971). Officer Baylis, in
fact, relied in good faith on information from a
source he had no reason to question. Further, he
took the additional precaution of calling the prose-
cutor to inquire about the necessity for a warrant.[4]

evidence in any criminal proceeding any narcotic drug * * * seized by
a peace officer outside the curtilage of any dwelling house in this
state."

Of course, reliance on this section of the Constitution is unneces-
sary, because, as already indicated, the evidence is admissible without
it under general Michigan law.

[4] Because of the facts of this case we need here consider neither the
argument of the California Supreme Court *[People v Martin,* 45 Cal
2d 755; 290 P2d 855 (1933)] that permission to use evidence against a
party that was illegally obtained from third parties invites police
invasion of the rights of third parties *(see* concurring opinion of then
Judge LEVIN, *People v Joshua,* 32 Mich App 581, 588, 590; 189 NW2d
105 [1971]) nor the argument for limiting the exclusionary rule in
that it is a unique procedural safeguard that precludes admission of

Since an analysis of the Michigan law on this phase of the matter reaches the same result as the Federal law, there is no occasion to consider whether the Federal law in this area pre-empts the Michigan law.

### V—Conclusion

Mrs. Auslander violated 18 USC 2511(1)(a) and MCLA 750.539c; MSA 28.807(3) in willfully eavesdropping on the conversation between Nancy Witherspoon in room 235 and an outside caller. But defendant was not shown to be a party to the telephone call and hence, under 18 USC 2518(10)(a) and 18 USC 2510(11), has no standing to suppress evidence of it. We hold that the Federal statute here is pre-emptive but in any event Michigan law provides for no right of suppression. Const 1963, art 1, § 11.

The police raid as a consequence of the communication of the "I've got drugs" message is not illegal as to defendant and the seized evidence is admissible.

The Court of Appeals is affirmed.

Coleman, J. *(concurring)*. I agree that the Court of Appeals should be affirmed. The police conduct does not warrant suppressing the evidence. They committed no illegal act. They had probable cause

evidence which is neither unreliable nor lacking in probative value as to the guilt of defendant and hence should not be extended *(see* dissent of Chief Justice Burger in *Bivens v Six Unknown Named Federal Narcotics Agents,* 403 US 388, 411; 91 S Ct 1999; 29 L Ed 2d 619 [1971], and authorities therein cited; and *Stone v Powell,* 428 US 465; 96 S Ct 3037; 49 L Ed 2d 1067 [1976], holding evidence admitted in state trials contrary to the Fourth Amendment no longer reviewable on Federal habeas corpus). *See also* Fishman, *The Interception of Communications Without a Court Order: Title III, Consent, and the Expectation of Privacy,* 51 St John's L Rev 41, 66–77 (1976), arguing that, under Federal law, evidence innocently or intentionally obtained by private parties should not be excluded.

to investigate; they had probable cause to enter the room; they had probable cause to arrest defendant and seize the evidence.

Much has been written about the switchboard operator, Mrs. Auslander. For purposes of this case, it is not important whether she is criminally or civilly liable. What is important, as Judge QUINN noted for the Court of Appeals, is that she "was a private individual; she had no connection with the police, nor was her monitoring of the telephone conversation * * * authorized by any police agency". Also, even if her conduct violated a statute, defendant has not demonstrated that he has standing to challenge that violation.

RYAN, J., concurred with COLEMAN, J.

FITZGERALD, J. *(dissenting).* I respectfully dissent from the majority opinion which holds that defendant has no "standing" to challenge the interception of the telephone call and its attendant consequences.

I can summarize my views in no better manner than in the words of Judge Donald Reisig of the 30th Judicial Circuit, the trial judge in the case, whose well-reasoned opinion, delivered from the bench, I adopt as my opinion in this cause.

Following is Judge Reisig's opinion as delivered at the conclusion of the proceedings:

I think it is safe to say that the issues now framed before me at 3:12 this afternoon are significantly different than what issues were framed before the Court of Appeals and the issues as I thought they were going to be at 1:29 this afternoon.

Make no bones about it, Mr. Rasmusson [the prosecutor], since my secretary advised me yester-

day afternoon that you had filed the writ of super-intending control, I had hoped that they would have granted that writ, that they would have stayed my hand, that they would have superimposed their decisional processes on mine. Why? Because I'm not a brave man. Let them do what must be done. "You can get rid of a hot potato, Reisig, because people are not going to understand complexities of the issues of this case regardless of how you decide it."

I shy from pain. Most people do. There are many things that I have to do here that I would love to duck, and I hope you've given me an opportunity to duck them. But it is now 3:14 and we've not heard from the Court of Appeals and I cannot in conscience any longer run from carrying out my constitutional mandate to uphold the Constitution of the United States, the Constitution of this state, the laws of the United States and the laws of this state, regardless of how my decision may not be understood.

Earlier you and I discoursed, Mr. Rasmusson, about the law.

Mr. Thomas More was a great figure of history and has become a great figure of literature. He fought King Henry and King Henry's attempts to discard his wife. He lost his head for it.

In Robert Bolt's play *A Man For All Seasons*,[1] Bolt discussed this issue of what is lawful and what is right and how things can be misunderstood in this context. The young man by the name of Rich, who historically as well as fictionally was the person who ultimately betrays Sir Thomas More by entering perjured testimony against More at More's trial, leaves the scene of a discussion

---

[1] Bolt, *A Man For All Seasons* (New York: Vintage Books, 1962), Act 1, pp 37–38.—Reporter.

with More when he seeks an appointment from
More, and as Rich leaves the scene, More's son-in-
law, Roper, says:

> "Arrest him.
> "*Alice:* Yes!
> "*More:* For what?
> "*Alice:* He's dangerous!
> "*Rich:* For libel; he's a spy.
> "*Alice:* He is! Arrest him!
> "*Margaret:* Father, that man's bad.
> "*More:* There is no law against that.
> "*Roper:* There is! God's law!
> "*More:* Then God can arrest him.
> "*Roper:* Sophistication upon sophistication!
> "*More:* No, sheer simplicity. The law, Roper, the law.
> I know what's legal not what's right. And I'll stick to
> what's legal."

No, I didn't like that the first time I read it. I'm
not so sure that I still do like it.

But let's go on.

> "*Roper:* Then you set man's law above God's!
> "*More:* No, far below, but let *me* draw your attention
> to a fact—I'm *not* God. The currents and eddies of right
> and wrong, which you find such plain sailing, I can't
> navigate. I'm no voyager. But in the thickets of the law,
> oh, there I'm a forester. I doubt if there's a man alive
> who could follow me there, thank God * * *
> "*Alice:* While you talk, he's gone!
> "*More:* And go he should, if he was the Devil himself,
> until he broke the law!
> "*Roper:* So now you'd give the Devil benefit of law!
> "*More:* Yes. What would you do? Cut a great road
> through the law to get after the Devil?
> "*Roper:* I'd cut down every law in England to do that!
> "*More:* Oh? And when the last law was down, and the
> Devil turned round on you—where would you hide,
> Roper, the laws all being flat? This country's planted

thick with laws from coast to coast—man's laws, not God's—and if you cut them down—and you're just the man to do it—d'you really think you could stand upright in the winds that would blow then? Yes, I'd give the Devil benefit of law, for my own safety's sake."

Counsel know that is what the rule of law is all about. The rule of law and constitutional and legal protections for criminal defendants are not designed to spring guilty people from jail cells, to turn murderers and rapists and, yes, drug pushers loose upon the street to wreak havoc with the innocent populace. They are there, those laws, and those constitutional mandates, to protect your and my rights, to protect them against an intolerant tyrannical sovereign, to protect them, to protect us against the petty, narrow-minded bureaucrat.

Their ambit is broad; their course is not always clear, their nuances, their wording, their syntax is often times confusing, and it takes a Philadelphia lawyer sometimes to find out their meaning. But when faced with a choice between moral aspects, where something can be said on either side—like More, Sir Thomas More—I have found in my life's experience, that attempting to do that which is lawful generally will end up being also that which is right.

Defendant's motion for rehearing is granted. The court considers the matter to have been fully submitted by counsel upon both their previous briefs and their oral presentations here today. I hope to be able to rule upon every issue raised hereon, not necessarily in the same logical fashion that I would if I were to write an opinion. But in light of my present schedule, such a written opinion could not follow in a timely fashion, and I believe it is essential, in the interests of all parties

concerned here, that the matter be resolved by this court.

The record below contained in excess of 756 pages, continued what?—four, five days. The witness Louise Auslander was on the witness stand for what?—how long I'm unable to tell. But approximately 100 pages of testimony is my best estimate from looking at the transcript.

Through Mr. Rasmusson's candid admission today, we do know that one crucial and essential part of her testimony was false. We know that she deliberately intercepted the phone call made into room 235.

Without again characterizing her testimony as perjurious, without getting into her motivations, which undoubtedly could well have been the highest minded in the world, it is the function of this court at this time to ascertain the legal consequences of her act of deliberately intercepting a phone call between persons who had not consented to such an interception. Any discussion of this topic must, first of all, be directed to the act known as § 605 of the Federal Communications Act, 47 USC 605.

That act indicates the concern of the Congress of the United States when it was adopted. In the findings made by the [Congress], the adoption of that act contained in § 801 of the act,[2] Congress said: "In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral

---

[2] Omnibus Crime Control and Safe Streets Act, 82 Stat 197, 211, § 801.—REPORTER.

communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings."

The broad dictates of § 605, Federal Communications Act, were made clearly applicable to the states by the decision of *Lee v Florida,* 392 US 378; 88 S Ct 2096; 20 L Ed 2d 1166 (1968). Briefly reiterated here for the record, the facts of that situation were as follows:

"Upon trial in the Criminal Court of Record for Orange County, Florida, the defendants were convicted for violating the state lottery laws. During the trial, the prosecution was allowed to introduce in evidence recordings of the defendants' telephone conversations, which had been obtained by state police officers by having a telephone connected to the party line of one of the defendants without his knowledge, in such a way as to permit continuous surreptitious surveillance and recording of all conversations on the line. The convictions were affirmed by the District Court of Appeals of Florida for the Fourth District. * * *

"On certiorari, the Supreme Court of the United States reversed. In an opinion by Stewart, J., expressing the view of six members of the court, it was held that (1) § 605 of the Federal Communications Act, which provides that no person not authorized by the sender shall intercept any communication and divulge the existence or contents of such intercepted communication to any person, was applicable to the states, (2) the conduct of the state police officers in the case at bar constituted an 'interception' of the defendants' communications within the meaning of § 605, and (3) the statute prohibited the admission in evidence in state as well as federal criminal prosecutions of communications that had been intercepted in violation of the statute."[3]

In effect, the court overruled the case of

---

[3] 20 L Ed 2d 1166.—REPORTER.

*Schwartz v Texas,* 344 US 199; 73 S Ct 232; 97 L
Ed 231 (1952), which had ruled to the contrary. It
is clear to the court from this decision that if there
has been an illegal interception of a conversation
without the consent of the parties thereto, or the
sender, as the act says, that that communication
cannot be divulged in state proceedings. The
Court, in making its decision, cited with approval
the case of *Nardone v United States,* 302 US 379,
382; 58 S Ct 275; 82 L Ed 314 (1937).

"We nevertheless face the fact that the plain words of
§ 605 forbid anyone, unless authorized by the sender, to
intercept a telephone message, and direct in equally
clear language that *'no person'* shall divulge or publish
the message or its substance to *'any person.'* To recite
the contents of the message in testimony before a court
is to divulge the message."

I repeat: "To recite the contents of the message
in testimony before a court is to divulge the mes-
sage."

"The conclusion that the act forbids such testimony
seems to us unshaken by the government's arguments.

                    *    *    *

"Congress may have thought it less important that
some offenders should go unwhipped of justice than that
officers should resort to methods deemed inconsistent
with ethical standards and destructive of personal lib-
erty. The same considerations may well have moved the
Congress to adopt § 605 as evoked the guaranty against
practices and procedures violative of privacy, embodied
in the Fourth and Fifth Amendments of the Constitu-
tion."

No person, no person shall divulge even in a
court of law. Congress may have deemed it more
important that a guilty person go unwhipped by

justice than that this type of activity should be engaged in. The United States Supreme Court has ruled that is a value judgment Congress can make. It is not for Judge Donald Reisig of the Ingham Circuit Court to say to the contrary regardless again of my personal proclivities, feelings or attitudes toward the entire topic of wiretapping or toward the entire topic of drug abuse. Those same policies underlie the whole principle, the whole foundation of the Safe Streets Crime Control Act of 1968 reported in 18 USC 2510.

There, upon the heels of the *Katz* decision, *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), Congress authorized wiretapping under very limited and prescribed circumstances and conditions where warrants were sought. Congress detailed the procedures, passed the act for only a limited period of time, prescribed, ordered the filing of reports.

Since this act, as counsel is well aware, there have been constant judicial opinions in recent years with reference to abuses thereof, both at the local level, failure to apply for wiretaps as well as the failure of the attorney general of the United States to properly authorize applications to judges for wiretaps. There is no avowed policy in this country that the private conversations and discourses of others can be deliberately overheard—the avowed policy to the contrary. The exceptions to that avowed policy are just that: they are exceptions and they are exceptions under extremely limited situations: (1) inadvertence, as we discussed at our last meeting, counsel, which is no longer an issue in this case, and (2) when there has been a properly authorized search warrant or wiretap warrant.

The same consideration I have mentioned up to

this point with reference to Federal law, § 605 of the FCC Act, and 18 USC 2510, *et seq.,* would also apply with application to the state law.

I firmly believe that under the Federal act that I referred to, that no state may make laws less stringent than the Federal regulations in this area. This is in keeping with all basic concepts of constitutional principle and of legislative pre-emption. It is imbued within our concept of twentieth century federalism.

The Michigan Legislature has declared the policy of this state in the Michigan act in no uncertain terms—I shouldn't say no uncertain terms, there are many uncertain terms therein—but in no uncertain terms, at least on this aspect of the controversy, MCLA 750.539a through 750.539i; MSA 28.807(1) through 28.807(9):

"Any person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c or 539d is guilty of a felony." MCLA 750.539e; MSA 28.807(5).

Section 539c punishes the person who willfully uses any device to eavesdrop upon the conversation of others, which is the applicable provision here.

*Lee v Florida, supra,* said the divulgence which is prohibited is not only a private divulgence, a divulgence within law enforcement circles, but the divulgence from the witness stand in the courts. The court cannot and will not be a party to a violation of these legislative mandates. This theory is the theory of the Wisconsin case that Mr. Stafford [defense counsel] has so aptly cited in his brief and which I adopt by reference here.[4]

---

[4] *State, ex rel Arnold v Rock County Court,* 51 Wis 2d 434; 187 NW2d 354 (1971).—REPORTER.

Next the court turns to the issue again which I have previously ruled upon, as to whether or not under the provisions of 18 USC 2510, *et seq.,* the defendant Warner is an aggrieved party under the definition of that Federal act. Since I last discoursed on this topic with counsel, I have reread the act. I can find a possible construction under which Representative Warner is an aggrieved party, or an aggrieved person.

The act reads, again I read from subsection 11, 18 USC 2510, " 'aggrieved person' means a person who was a party to any intercepted wire or oral communication—"and it is clear here that defendant Warner has not put himself in a position of admitting that he was a party to that intercepted telephone call, "—or a person against whom the interception was directed".

The problem with that language is that, unfortunately what Congress really meant was where the police, either through a valid wiretap order which is not validly performed or through some other action, are specifically going after Reisig, let's say, then Reisig would be an aggrieved person. But because of the very nature of this situation, it cannot be said that Mrs. Auslander, when she intercepted, was necessarily going after any defined or described person, except, I think it's reasonable to say, that she did intend to intercept a conversation between somebody in room 235 and somebody else.

So, certainly, it could be argued that she, in her direct interception to somebody in that room, and maybe perhaps more specifically by way of *dicta,* to the person who occupied that room, under the *Alderman* decision, *[Alderman v United States,* 394 US 165; 89 S Ct 961; 22 L Ed 2d 176 (1969)] can it also be said from this that she directed her

interception to anybody else who might be on the line? I think it is at least arguable; it is at least arguable. But we are still then confronted with the problem that we don't know who else was on the line.

Basically it is my ruling that Representative Warner does not come under the clear congressional definition of an aggrieved person, as a person who can attack the tap directly. But we then must come to the other point of the dilemma, and that is: Is Representative Warner a person who may attack the search and seizure of room 235 itself? And this is where the law that Mr. Stafford and which counsel have all cited in their briefs—because it is very pertinent, from *Jones [Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960)] on down to today.

Earlier, during the hearing, I asked Mr. Stafford to repeat the citation, the case he was citing, because I had a case right in front of me, and it was the same case, *Brown v United States* [411 US 223; 93 S Ct 1565; 36 L Ed 2d 208 (1973)]. There the Burger Court ruled that an individual did not have standing, at least upon the record before that court. They found the defendant in that case met none of these elements.

In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure, where as here, the defendants (a) were not on the premises at the time of the contested search and seizure. Representative Warner was on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises. By this it means that if I own the home and the search is made thereof even when I am not there, I would have standing. And finally (c) where the defendants were not charged

with an offense that includes as an essential element of the offense charged possession of the seized evidence at the time of the contested search and seizure.

For the purposes of attacking the search and seizure, Representative Warner clearly has standing under conditions (a) and (c).

We then turn to the question of the illegality of the search and seizure, the question of how the initial information was obtained. We go back to the interception. A willful, illegal interception was made. In and of itself, Representative Warner was not an aggrieved person to attack that interception. I already ruled that way under the Federal act. But that information was thereafter divulged. It was thereafter disclosed by Mrs. Auslander to a police officer, and that police officer divulged it to others, and eventually that testimony came into this courtroom, or lower courtroom. But for the illegal interception, there would have been no search and seizure. The interception was the direct cause, the proximate cause, a foreseeable cause of the ultimate search and seizure. But for the divulgence of this information to Officer Baylis, there would have been no Officer Baylis standing out in the hallway, no Officer Baylis knocking on the door, or the door opening, no Officer Baylis and other officers entering the room into the activities inside that room. But for the divulgence of this information in the lower court, Representative Warner would not be standing charged with this offense at this time.

By way of *dicta,* whether or not the original taint in this matter, the illegal interception could have been isolated or insulated, whether or not the primary illegality, counsel, could have been isolated by application for search warrant is perhaps

hypothetical, and certainly is *dicta* to me. But I could much more readily accept that type of argument, a willful interception made by a curious woman who didn't want prostitution to go on in her motel, or whatever might be intercepted. Perhaps divulgence at that time for the purposes of commencing judicial proceedings made the primary taint so attenuated that a valid search and seizure could have been made under a valid and legal search warrant. That the emergency here was not that type of an emergency which might be deemed if we were talking about kidnaping or a bank robbery or extortion or something of that nature.

Information was divulged that there were drugs in that room. Mrs. Witherspoon, I believe her name was, had been registered in that room for three or four days. There was no reason to believe that if a raid wasn't made in 15 or 20 minutes that the drugs somehow would have dissipated. The law prefers a search warrant.

Searches made otherwise are exceptions to the mandates of the Constitution that there shall be search warrants. Many of the exceptions have eaten up the original rule, but it is still the preferred method.

I repeat again—and I believe in history—that the first year that the Michigan search warrant law of 1967 was on the books, when I was prosecutor of this county, I used it 33 times, and I never had one of those warrants attacked in a court of law—and we hit every time, too. We obtained evidence every time.

It is a well-known fact in this county that judges eat lunches. It is also a well-known fact where most of us eat, or at least where some of us eat most of the time. So that the unavailability of

judges during a luncheon hour may be a practical
problem; it may be a practical hurdle, but it could
have been overcome.

Why? Why this theory of law? Why this congres-
sional policy against wiretapping, bugging, elec-
tronic surveillance? Why is it so bad, particularly
when we catch somebody who may be a criminal?
Perhaps it is imbued within our culture, within
our heritage that we like our privacy—for good or
for evil.

I don't think, unless one has ever been directly
affected by this type of thing, followed, harassed,
bugged, by forces of law or by forces of darkness,
that one can probably really understand it. I know
I can't. I have said I would gladly give up some of
my freedoms that I never exercised anyway for a
little more lawful society, which might also mean
a little less work. But that's not the issue.

*Katz v United States,* which I cited earlier,
protects, extends the protections of our Constitu-
tion to areas of privacy, broadly stated, to areas
where we have a reasonable expectation of pri-
vacy. Eavesdropping, at common law, was a nui-
sance. Historically, to stand under the eaves of
somebody else's roof and to listen was an awesome
offense for which you could be docked and pun-
ished and placed on bond. Over the years the laws
have changed a little bit, and we assume because
you had to walk across somebody else's property
you physically trespassed in order for this to be a
crime.

But *Boyd v United States* [116 US 616; 6 S Ct
524; 29 L Ed 746 (1886)], and cases since that time
—and that's 1886—have come out with the idea
that it's not a property interest here. A man
doesn't have to own or possess property in order to
have protection, that one can be homeless, root-

less, and moneyless, and still be a citizen in a free society, still have all the rights of all those who are wealthy and moneyed and propertied.

Again it is not for me to say. These dictates of our Constitution, as interpreted by the Supreme Court, are something that I must overlook here so that we can get after the devil.

In my allusions, both to the devil now and in reference to Thomas More, I make no reference to the personage of your client, Mr. Stafford. I'm talking rhetorically only.

The very concepts embodied here in the Federal Communications Act, as Mr. Stafford has pointed out, Michigan long ago adopted this principle, this concept, that we shall exclude from the courts of law illegally obtained evidence regardless of how probative it is. It is said in the *Alderman* case, *supra,* on this principle on search and seizure.

But let me make this point also. We exclude regardless of whether it is probative or not to protect the rights of us all. But we also have exclusionary rules which exclude evidence because it is the easiest way to deal with how probative evidence might be. We exclude coercive confessions, yes, because we don't want police agents, agents of the state, coercing people to get confessions. But also we know that those types of confessions are inherently unreliable.

I suggest we touch here upon the errant, unreliable taint and we are confronted with a record of some hundred pages, and we find that some months thereafter that that hundred pages of testimony is shaded by untruths or half truths.

If I have not concluded the standing issue, I find Representative Warner to have standing to attack the search and seizure of the motel room under

the doctrine of *Brown v United States, supra,* and all the other supporting authority.

The primary taint of the illegal interception was not so attenuated as to free the search and seizure of that taint, that there never would have been a search and seizure of the room on that date but for the illegality.

One passing comment, conclusion to my ruling which I'm about to make, which is obvious to you all, leaves the issue of the defendant's ultimate complicity in this matter something for speculation. I don't know how he might personally feel about the matter, but perhaps put in his shoes I might well feel that I have lost my day in court.

Be that as it may, whether he be a Representative in the Legislature of the State of Michigan or the lowliest of our citizens, he is equally entitled to the protections of the rule of law. The consequences of this decision and of these events of some ten months ago is something which only he has any capacity to ascertain or to handle.

It is the order of this court, having granted rehearing, that my earlier decision, which has never been reduced to writing by order, based upon new facts is set aside, and I hereby order that the evidence seized in this matter as the result of the search on August 15, 1973, is suppressed. Having reviewed the record, this court finds no competent legal evidence exists or can be produced upon which the defendant Dale Warner can now be prosecuted. The information is quashed. An order may enter accordingly.

KAVANAGH, C. J., concurred with FITZGERALD, J.

LEVIN, J. Dale Warner is awaiting trial on charges related to the use and possession of nar-

cotics. The circuit judge granted a motion to suppress physical evidence derived from information obtained by intercepting a telephone conversation. The issue is whether the derived evidence should, pursuant to statute, be suppressed.

While the telephone conversation was intercepted by a private citizen, not acting for the police, the Federal statute makes willful interception of a telephone conversation unlawful. The prosecutor formally conceded that the interception was "not inadvertent".

The statute provides that an "aggrieved person" may move to suppress evidence derived from an unlawful interception.

The Court of Appeals did not reach the question whether Warner was an aggrieved person; it ruled that the derived evidence, obtained when Warner was arrested as a result of further investigation by the police, is admissible because the police did not know that the telephone information had been unlawfully obtained.

The circuit judge reached the standing question. He declared that Warner was not an aggrieved person under the statute because he had not admitted that he was a party to the intercepted telephone conversation. He suppressed the evidence on the ground that Warner had standing to complain of the search and seizure, at the time of arrest, which yielded the derived evidence.

Warner did not testify at the evidentiary hearing.[1] The standing question was, however, put in issue by the claim, supported by circumstantial

---

[1] The motion to suppress was decided by the circuit court on the record made at the preliminary examination, supplemented on rehearing to support the contention that the interception was purposeful. It is unusual for the defendant to testify at the preliminary examination and it is therefore not surprising that Warner did not testify at the time.

evidence, of Warner's counsel that he was an aggrieved party.

Warner's standing as an aggrieved party could be established through evidence other than Warner's testimony or admission. Contrary to a colleague's conclusion that "there was no evidence that [Warner] was a party to that call", there was sufficient circumstantial evidence to establish prima facie that Warner was a party to the telephone conversation.

The circuit judge, having concluded that an admission by Warner was prerequisite, made no factual findings on the question whether Warner was an aggrieved person under the statute. On remand there should be further fact finding and the derived evidence should be suppressed if it is found that Warner was a party to the intercepted conversation.

I

Louise Auslander, a motel desk clerk and co-manager, received an outside telephone call from a man for room 235 shortly before noon. She testified that she overheard a female voice say "I've got drugs". Auslander reported the conversation to the Lansing police. Sergeant Baylis arrived at 11:50 a.m. Auslander admitted Baylis to a room near room 235. Baylis observed Warner enter room 235 and then he positioned himself in the hallway in front of that room. After listening for about 15 minutes to the conversation emanating from that room, uniformed officers announced their presence and entered. Warner was observed holding narcotics paraphernalia, was arrested, and the paraphernalia, later proved to contain heroin, was seized.

At the preliminary examination Warner sought

suppression of the seized evidence pursuant to the Federal[2] and Michigan statutes.[3] The statutes proscribe the "willful" interception of telephone communications.[4] The district judge concluded that Auslander's interception was inadvertent and therefore not willful. He denied the motion to suppress and bound Warner over to circuit court on the narcotics charges.

The circuit judge at first concluded that because the district judge had the advantage of seeing Auslander he should accept his conclusion that she was not purposefully attempting to overhear or intercept the conversation. On rehearing, Warner produced testimony tending to show that the interception was intentional, and then the prosecutor obtained further information which caused him formally to "concede that it was not inadvertent".

Both the district judge and the circuit judge were of the opinion that the conversation following "I've got drugs" necessarily was willfully intercepted and, accordingly, Auslander did not testify on the record to the rest of the conversation. It appears, however, from the circuit judge's opinion

---

[2] 18 USC 2510 *et seq.*

[3] MCLA 750.539 *et seq.;* MSA 28.807 *et seq.*

The Michigan statute parallels the Federal statute but does not provide explicitly regarding standing or suppression of evidence.

[4] "Except as otherwise specifically provided in this chapter any person who—

"(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

\* \* \*

"(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;

\* \* \*

"shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 USC 2511(1).

that the man's response was "I'll be there in 15
minutes".[5] It further appears from Baylis' testi-
mony that he was standing in the hallway for 15
minutes before he entered room 235 and arrested
Warner at 12:20; Warner arrived at the motel
shortly after noon, within 30 minutes of the inter-
cepted telephone call which Auslander said came
in shortly before noon.

Baylis testified that after reaching police head-
quarters at 12:50, he asked Warner why he was in
the motel room and he responded "that he had
had earlier conversation in the day" with the
female occupant of the motel room about his tak-
ing her to visit her husband.

## II

The Federal statute provides that an "aggrieved
person" in any trial, hearing or proceeding in any
state or Federal court may move to suppress the
contents of an intercepted communication "or evi-
dence derived" therefrom on the ground that the
communication was unlawfully intercepted.[6] The

---

[5] The Court of Appeals also observed that, based on what she
overheard, Auslander had given Sgt. Baylis to understand that a drug
transaction would take place within a matter of minutes at room 235.

[6] "Any aggrieved person in any trial, hearing, or proceeding in or
before any court, department, officer, agency, regulatory body, or
other authority of the United States, a State, or a political subdivision
thereof, may move to suppress the contents of any intercepted wire or
oral communication, or evidence derived therefrom, on the grounds
that—

"(i) the communication was unlawfully intercepted." 18 USC
2518(10)(a).

The statute also provides:

"Whenever any wire or oral communication has been intercepted,
no part of the contents of such communication *and no evidence
derived therefrom* may be received in evidence in any trial, hearing
or other proceeding in or before any court, grand jury, department,
officer, agency, regulatory body, legislative committee, or other au-
thority of the United States, a State, or a political subdivision thereof
if the disclosure of that information would be in violation of this
chapter." 18 USC 2515 (Emphasis supplied.)

term aggrieved person is defined as "a party to any intercepted" communication.[7]

The circuit judge declared that Warner was not a party to the intercepted telephone conversation because "it is clear here that defendant Warner has not put himself in a position of admitting that he was a party to that intercepted telephone call".

Warner's counsel, in response to a question from the judge, said that "if you were to accept [the testimony of the people's witnesses], I think they have shown a prima facie case that would make the defendant an aggrieved person under that statute".[8]

---

In *Alderman v United States,* 394 US 165, 175–176, fn 9; 89 S Ct 961; 22 L Ed 2d 176 (1969), *reh den,* 394 US 939; 89 S Ct 1177; 22 L Ed 2d 475 (1969), the Court declared that the legislative history of the act indicates that the term aggrieved person "should be construed in accordance with existent standing rules".

The Supreme Court of California, in *People v Martin,* 45 Cal 2d 755, 760–761; 290 P2d 855, 857 (1955), allowed a codefendant to raise the search and seizure issue. This rule was reaffirmed in *Kaplan v Superior Court of Orange County,* 6 Cal 3d 150, 153; 98 Cal Rptr 649, 650; 491 P2d 1 (1971). *Cf. United States v Valencia,* 541 F2d 618 (CA 6, 1976). The American Law Institute, in its proposed Model Code of Pre-Arraignment Procedure, has accepted the view that a motion to suppress things seized may be made by a codefendant who may himself be without standing. ALI, Model Code of Pre-Arraignment Procedure (Proposed Official Draft No 1, 1972), § 290.1(5).

[7] Warner does not contend that he is a person "against whom the interception was directed", nor is it necessary in the present posture of the case to consider whether a person who is not an actual speaker may be a party to a conversation.

[8] *Contrast In the Matter of Berry,* 521 F2d 179 (CA 10, 1975), *cert den* 423 US 928; 96 S Ct 276; 46 L Ed 2d 256 (1975), *reh den* 423 US 1039; 96 S Ct 577; 46 L Ed 2d 414 (1975), where the United States Court of Appeals for the Tenth Circuit held that the defendant was not an aggrieved person because he had not *claimed* to be an aggrieved person and there was no evidence indicating the possibility of an illegal electronic surveillance. *Similarly, see Sponick v Detroit Police Department,* 49 Mich App 162, 197; 211 NW2d 674 (1973), where it was held that the defendants did not have standing because they did not *allege* that they were aggrieved persons and had not indicated "in any manner whatsoever just what evidence submitted against them was derived from illegal electronic surveillance".

In *United States v Ransom,* 515 F2d 885 (CA 5, 1975), *reh en banc den,* 520 F2d 944 (CA 5, 1975), *cert den,* 424 US 944; 96 S Ct 1412; 47

It is manifest that Warner's standing as an aggrieved person could be shown by evidence other than his own testimony asserting that he was the "male voice". That he was the "male voice" could have been shown, for example, through the testimony of the "female voice" or Auslander or someone who was with Warner when he placed the call. His standing as an aggrieved person could also be established by circumstantial evidence without direct evidence or testimony.

The circuit judge erred in concluding, as a matter of law, that Warner was not an aggrieved person because he had not admitted he was a party to the conversation.[9]

In *United States v Banks,* 374 F Supp 321, 328 (D SD, 1974),[10] it was established that the FBI had unlawfully monitored telephone conversations and had heard the voices of various persons, including the voice of defendant Means or defendant Banks. In holding that both defendants had standing as "aggrieved persons", the court said:

"This indication that Means could have been overheard, plus the fact that unidentified male voices (which *could* have been Means') were heard by other FBI agents, both of which are unrefuted, support the

L Ed 2d 349 (1976), *reh den,* 425 US 945; 96 S Ct 1687; 48 L Ed 2d 189 (1976); *United States v Armocida,* 515 F2d 29 (CA 3, 1975), *cert den,* 423 US 858; 96 S Ct 111; 46 L Ed 2d 84 (1975); and *United States v Bynum,* 513 F2d 533 (CA 2, 1975), *cert den,* 423 US 952; 96 S Ct 357; 46 L Ed 2d 277 (1975), cited by the people, it was established that the defendant was not a party to the conversation.

[9] *Compare People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977), where this Court said "the defendant will not be required to admit the criminal act in order to raise the entrapment issue".

*See, also, Simmons v United States,* 390 US 377, 393–394; 88 S Ct 967; 19 L Ed 2d 1247 (1968), where the United States Supreme Court said "[i]n these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another".

[10] Subsequent decisions relating to this prosecution do not concern this issue and for that reason are not cited.

Court's conclusion that both defendants have standing in this case." (Emphasis supplied.)

The circumstantial evidence in this case established a prima facie case that Warner was an aggrieved person. Auslander testified that a man had telephoned room 235 and the female occupant of the room said "I've got drugs". It appears from statements of counsel and the judge on the record that the man responded "I'll be there in 15 minutes". Even if it is thought that the portion of the intercepted conversation not formally of record may not be considered even for the purposes of the suppression motion *(cf. United States v Banks, supra)*, there is the evidence that within 30 minutes of the statement "I've got drugs" Warner appeared at room 235 and his statement to Baylis that he had had a conversation with the occupant of the room earlier in the day. It would be reasonable to infer from the evidence of record that Warner was the "male voice".

Surely if we were considering whether an accused could be convicted of making an obscene telephone call[11] there would be no doubt that there is sufficient evidence to make a jury-submissible question on a showing that an unidentified man had made an obscene telephone call to a woman who, in an effort to trap her caller, invited him to meet her and telephoned the police, and within 30 minutes the accused arrived proximately within the time and at the place designated.

There was sufficient circumstantial evidence to warrant a finding that Warner was a party to the telephone conversation. The question whether to draw the inference that he was a party to the conversation is initially for the trier of fact, not

[11] MCLA 750.540e; MSA 28.808(5).

this Court. On remand the circuit judge should
make findings of fact on this question.[12]

BLAIR MOODY, JR., J., took no part in the deci-
sion of this case.

---

[12] Because the circuit judge originally concluded that the derived
evidence should not be suppressed if the interception was inadvertent
and later decided to suppress the evidence on alternative grounds, the
record was not fully developed. It would therefore be appropriate, in
the exercise of the circuit judge's informed discretion, to permit
supplementation of the record regarding the whole conversation
overheard by Auslander and by such additional evidence as either
party may wish to present.